Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
   Kinser, JJ., and Whiting, Senior Justice

LAURA L. DOSS
                                        OPINION BY
v.  Record No. 970703        CHIEF JUSTICE HARRY L. CARRICO
                                     October 31, 1997
JAMCO, INC.

        UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
          DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA


        By a "STIPULATED ORDER OF CERTIFICATION" entered April 9,

1997, the United States District Court for the Western District

of Virginia (Lynchburg Division) certified to this Court,

pursuant to our Rule 42, the following question of law:
        Does Va. Code § 2.1-725(D) prohibit a common law cause
        of action based upon the public policies reflected in
        the Virginia Human Rights Act, Va. Code § 2.1-714 et
        seq.?

By order dated April 28, 1997, we accepted the certified question

of law.

        The question arose when, on December 23, 1996, Laura L. Doss

(Doss) filed in the District Court a two-count complaint alleging

that her former employer, Jamco, Inc. (Jamco), had unlawfully

terminated her employment "because of her sex and because she was

pregnant."  In Count 1, which is not involved in this proceeding,

 Doss sought to recover damages for Jamco's alleged violation of

Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et

seq.).  In Count 2, which is implicated here, Doss sought to

recover damages for Jamco's alleged violation of "the statutorily

expressed public policy of the Commonwealth of Virginia as

embodied in the Virginia Human Rights Act (Va. Code § 2.1-714 et

seq.) and as expressed in Title VII of the Civil Rights Act of

1964 (42 U.S.C. § 2000e et seq.) and elsewhere."

The relevant facts are recited in the stipulated order of certification, as follows:

> [Doss] was hired by [Jamco] and agreed to begin work on March 11, 1996. . . . [P]rior to reporting to work for [Jamco] on March 11, 1996, [Doss] learned that she was pregnant. Upon reporting for work, [Doss] told [Jamco's] employees who were to be her supervisors about her pregnancy. . . . [O]n March 12, 1996, [Jamco's] supervisors informed [Doss] that her employment was being terminated because her maternity leave would cause her to be out during the Company's busy time which was unacceptable to [Jamco].

We note that Doss grounds her claim for unlawful discharge upon the public policy of Virginia as embodied in the Virginia Human Rights Act and "as expressed in Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and elsewhere." However, in answering the certified question, we are limited by the terms of the certification order to "the public policies reflected in the Virginia Human Rights Act." Therefore, we express no opinion concerning the public policy of Virginia as it might be articulated in sources other than the Virginia Human Rights Act.

Ever since this Court decided Stonega Coal and Coke Co. v. Louisville and Nashville R.R., 106 Va. 223, 55 S.E. 551 (1906), Virginia has adhered to the rule that when an employment contract provides for the rendition of services but its intended duration cannot be determined from its provisions, "either party is ordinarily at liberty to terminate it at will on giving reasonable notice of his intention to do so." Id. at 226, 55 S.E. at 552. However, the rule is not absolute. Bowman v. State Bank of Keysville, 229 Va. 534, 539, 331 S.E.2d 797, 801 (1985).

In Bowman, which predated the adoption of the Virginia Human Rights Act, we recognized a limited exception to the employment-at-will rule.  This exception allowed two bank employees who were also stockholders of the bank corporation to maintain a common law action in tort against their employer.  The employees were discharged after failing to heed a threat from the employer that their employment would be terminated if they failed to vote their stock according to the wishes of corporate management.  Such action by the employer, we said, violated the public policy established by Va. Code § 13.1-32 (now Va. Code § 13.1-662), which contemplated "that the right to vote [shares of stock] shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management."  Id. at 540, 331 S.E.2d at 801.

Bowman was followed by Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915 (1987), where the events giving rise to the litigation predated the adoption of the Virginia Human Rights Act.  There, the employee alleged that her termination was in retaliation of her appearance as a witness at a co-employee's grievance hearing.  The trial court sustained a demurrer to the employee's motion for judgment, and we affirmed.  We noted the exception recognized in Bowman that allows recovery for "discharges which violate public policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general."  Id. at 468, 362 S.E.2d at 918.  We held, however, that the Bowman exception was not applicable because the "retaliatory

act [of discharging the employee] would impinge only upon private rights established by the employer's internal regulations [and] would have no impact upon any public policy established by existing laws for the protection of the public generally." Id., 362 S.E.2d at 919.

At its 1987 session, the General Assembly adopted the Virginia Human Rights Act (the Act). 1987 Va. Acts ch. 581 (Chapter 43 of Title 2.1 of the Code of Virginia, §§ 2.1-714 through -725). In 1996, when Doss's termination occurred, Va. Code § 2.1-715 provided that "[i]t is the policy of the Commonwealth of Virginia . . . [t]o safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability . . . in employment . . . ."[1]

Following adoption of the Act, this Court considered the case of Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 439 S.E.2d 328 (1994).[2] Lockhart involved the claims of two female at-will employees who alleged they were wrongfully discharged from employment, one because of her race and the other because of her sex. The claims of both employees were dismissed on demurrer, and this Court reversed. After citing Va. Code § 2.1-715 as declarative of the "Commonwealth's strong public

---

[1]At its 1997 session, the General Assembly amended Va. Code § 2.1-715 by adding "pregnancy, childbirth or related medical conditions" to the list of unlawful bases for discrimination in employment.

[2]Wright v. Donnelly & Co., Record No. 930205, was decided at the same time as Lockhart and by the same opinion.

policy against employment discrimination based upon race or gender," 247 Va. at 105, 439 S.E.2d at 331, the Court stated as follows:

> We recognize that the Virginia Human Rights Act does not create any new causes of action. Code § 2.1-725. Here, we do not rely upon the Virginia Human Rights Act to create new causes of action. Rather, we rely solely on the narrow exception that we recognized in 1985 in Bowman, decided two years before the enactment of the Virginia Human Rights Act.

Id. Accordingly, the Court held that the two employees had "pled viable causes of action." Id. at 104, 439 S.E.2d at 331.[3]

Lockhart was decided in 1994. At the 1995 session of the General Assembly, a bill was introduced that would have had the effect of overruling Lockhart. (S. 1025.) Two versions submitted as amendments in the nature of substitutes expressly stated their purpose was the "nullification" of Lockhart. (S. 1025, Committee Amendment in the Nature of a Substitute; S. 1025, Floor Amendment in the Nature of a Substitute.) However, in its enacted form, the legislation did not employ the "nullification" language, but amended Va. Code § 2.1-725 in several respects.

As originally enacted, Va. Code § 2.1-725 provided as

---

[3]Subsequent to Lockhart, this Court applied the original version of the Virginia Human Rights Act in deciding Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 480 S.E.2d 502 (1997) (maintenance of common law action in tort allowed for wrongful discharge based upon gender), and Bradick v. Grumman Data Sys. Corp., 254 Va. 156, 486 S.E.2d 545 (1997) (maintenance of common law action in tort allowed for wrongful discharge based upon disability). We decided another wrongful discharge case post-Lockhart, but disallowed a common law recovery because the employee was unable to identify any Virginia statute establishing a public policy that was violated by the employer. Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 465 S.E.2d 806 (1996).

follows:

> Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination.

The 1995 amendments deleted the second sentence of Va. Code § 2.1-275, made the first sentence subsection A, and changed its language. The subsection reads as follows: "Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions, except as specifically provided in subsections B and C of this section."

Subsections B and C are new. They create a statutory cause of action against an employer of more than five but less than fifteen persons. Subsection B provides that no such employer shall discharge an employee "on the basis of race, color, religion, national origin or sex, or of age if the employee is forty years or older."[4] Subsection C provides that "[t]he employee may bring an action in a general district or circuit court having jurisdiction over the employer who allegedly discharged the employee in violation of this section." A court

---

[4]The stipulated order of certification notes that, because Jamco employs more than fifteen persons, it is not subject to a claim under Va. Code § 2.1-725(B) and (C).

At its 1997 session, the General Assembly added "pregnancy, childbirth or related medical conditions" to the prohibited bases for discharge listed in Va. Code § 2.1-725(B).

may award up to twelve months back pay, with interest, and the award may be increased or decreased if either party engages in tactics to delay resolution of the complaint.  A court may also award attorney's fees from the amount recovered, not to exceed twenty-five percent of the back pay awarded, but the court shall not award other damages, compensatory or punitive, nor shall it order reinstatement of the employee.

Subsection D, upon which the certified question focuses, is also new.  It provides in pertinent part as follows:

> Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.

Doss maintains, in effect, that nothing has changed.  She says that Lockhart remains the controlling law and that all the General Assembly accomplished with its 1995 amendments to the Act is the creation of a statutory cause of action against employers of more than five but less than fifteen persons.

Doss points out that the cause of action recognized in Bowman and Lockhart "is a tort action arising solely under common law."  She says that although the General Assembly may abrogate or alter the common law, its intent to do so must be plainly manifested, Peoples Sec. Life Ins. Co. v. Arrington, 243 Va. 89, 92, 412 S.E.2d 705, 707 (1992), and she insists that the 1995 amendments to the Act do not manifest an intent to alter the common law as articulated in Lockhart.

Doss maintains that despite the language in the original version of Va. Code § 2.1-725 disavowing the creation of an

independent or private cause of action, this Court had no trouble finding in Lockhart that the Act did not prohibit a Bowman-type action in tort for the unlawful termination of employment. And Doss says that nothing in new subsection D supports such a prohibition. Indeed, she opines, with the 1995 deletion of the language in the second sentence of Va. Code § 2.1-725 abjuring tort actions, "any alleged prohibition against Lockhart-type tort claims [is made] even less clear."

Furthermore, Doss submits, if a statute is ambiguous, the court may resort to legislative history and the enactment process to ascertain legislative intent. Doss says that the language in the Act is ambiguous and that we should examine the enactment process involving the 1995 amendments to ascertain their meaning.

Doss says such an examination would reveal that while the original 1995 bill and its subsequent substitute amendments all contained clear declarations of intent to nullify Lockhart, these declarations were not retained in the final enacted version of the bill. Hence, the fair inference to be drawn, Doss concludes, is that the General Assembly did not intend to nullify Lockhart.

The issue, then, is whether, in the enactment of the 1995 amendments, the General Assembly plainly manifested an intent to abrogate or alter the common law with respect to causes of action for unlawful termination of employment. Settled principles guide our resolution of this issue.

> When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.

<u>Winston v. City of Richmond</u>, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954).

In the absence of ambiguity, a court may look only to the words of the statute to determine its meaning, and when the meaning is plain, resort to rules of construction, legislative history, and extrinsic evidence is impermissible. <u>Harrison & Bates, Inc. v. Featherstone Assoc.</u>, 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997); <u>Va. Dept. of Labor v. Westmoreland Coal Co.</u>, 233 Va. 97, 99, 353 S.E.2d 758, 760 (1987); <u>Brown v. Lukhard</u>, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

We disagree with Doss that the Act as amended in 1995 is ambiguous. What we said of the statute involved in <u>Harrison & Bates</u> applies with equal force to the enactment involved here:

> Nothing in the language of this statute is inherently difficult to comprehend, of doubtful import, or lacking in clarity and definiteness. Accordingly, it is not necessary to look beyond the plain language of the statute to ascertain its underlying legislative intent.

253 Va. at 369, 484 S.E.2d at 886.

In our opinion, in amending the Act by adding subsection D to Va. Code § 2.1-725 in 1995, the General Assembly plainly manifested its intention to alter the common law rule with respect to "[c]auses of action <u>based upon the public policies reflected in [the Act]</u>." (Emphasis added.) And, just as plainly, the General Assembly altered the common law rule by providing that such causes of action "shall be <u>exclusively limited</u> to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or

local ordinances."  (Emphasis added.)

This is what the Act as amended says, and this is the meaning that must be given to the Act to carry out the clear intent of the General Assembly.  To say, as Doss would have us say, that the 1995 amendments changed nothing would render meaningless the General Assembly's use of the words "exclusively limited" and reduce to an absurdity its creation of a statutory cause of action against employers of more than five but less than fifteen persons.

> The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word . . . .

Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984).

Finally, in her reply brief, Doss cites Va. Code § 2.1-717, a part of the Act, which provides in part as follows:

> The provisions of this chapter shall be construed liberally for the accomplishment of the policies herein.  Nothing contained in this chapter shall be deemed to repeal, supersede or expand upon any of the provisions of any other state or federal law relating to discrimination because of race, color, religion, national origin, sex, age, marital status or disability.[5]

Doss argues that, in this Code section, the Act creates "its own rule of statutory construction," and, under the rule, the Act "cannot be used as the basis for repealing or superseding the common-law expressed in Bowman and Lockhart."  The Act, however,

---

[5]A 1997 amendment to Va. Code § 2.1-717 added "pregnancy, childbirth or related medical conditions" to the list of unlawful bases for discrimination in employment.

is not the basis for the General Assembly's authority to abrogate or alter the common law.  The basis for the General Assembly's authority is found in Va. Code § 1-10, which provides as follows:

> The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, <u>except as altered by the General Assembly</u>.

(Emphasis added.)  To adopt Doss's argument would lead to the conclusion that, in enacting Va. Code § 2.1-717, the General Assembly effectively repealed or superseded Va. Code § 1-10 insofar as its authority to alter the common law with respect to a substantial class of cases is concerned, and that would be an unreasonable conclusion to reach.  So we reject Doss's argument.

Finding that, in enacting the 1995 amendments to Va. Code § 2.1-725, the General Assembly plainly manifested an intent to abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public policies reflected in the Act, we will answer the certified question in the affirmative.

<u>Certified question answered in the affirmative</u>.