# CIRCUIT COURT OF FAIRFAX COUNTY

Mitra Wenig

v.

Hecht Co.,
May Department
Stores Co., et al.

October 29, 1998

Case No. L164151

BY JUDGE KATHLEEN H. MACKAY

This case comes before the Court on Defendant, The May Department Stores Company's ("May Company") demurrer to Plaintiff, Mitra Wenig's First Amended Motion for Judgment. The May Company demurs to Count I, Wrongful Discharge; Count II, Intentional Infliction of Emotional Distress; and Count III, Defamation. The Court sustained the demurrer as to Counts II and III at the hearing held July 31, 1998. The only issue remaining before the Court is whether Wenig properly stated a claim for wrongful discharge in order to survive demurrer. After hearing oral argument, reading the parties' memoranda, and reviewing the applicable cases, the Court sustains the May Company's demurrer as to Count I without leave to amend.

## I. *Allegation*

In her First Amended Motion for Judgment, Wenig, a retail employee and accounts manager for the Lauder cosmetics line, alleges that she was induced to move from Woodward and Lothrop to Hecht's with promises of success and advancement. At Hecht's, she claims to have received above average performance appraisals. (FAMFJ ¶ 5-10.)

While at Hecht's, the employees under her supervision made continuous racial, ethnic, and other slurs about customers and made physical threats to her. Wenig is of Iranian descent. Wenig reported this behavior to her supervisors, but the improper activity continued and indeed escalated. (FAMFJ ¶ 11-14.)

In addition, Wenig reported alcohol abuse and drunken behavior on the part of Hecht's employees. Wenig's supervisors not only did nothing to correct the situation, but they mounted a retaliatory campaign against Wenig. Not only was Wenig denied a promotion to a position for which she was qualified, one of her supervisors prevented her from obtaining a position with the Lauder account at Nordstroms. (FAMFJ ¶ 16-26.)

Wenig maintains that the workplace environment became so hostile that she had no choice but to resign. She argues she was constructively terminated for reporting criminal conduct. (FAMFJ ¶ 27.)

Wenig alleges that her discharge violates public policy as articulated by the laws of the Commonwealth and of the United States. Specifically, she argues her termination violates the policies behind Title VII, 42 U.S.C. §§ 2000e *et seq.*, and Virginia criminal statutes at §§ 18.2-57 (Assault and Battery), 18.2-416 (Punishment for Using Abusive Language to Another), 18.2-388 (Profane Swearing and Intoxication in Public), 18.2-499 through 18.2-501 (Conspiracy to Injure Another in Trade, Business, or Profession).

## II. *Analysis*

### A. *History*

It is impossible to analyze the sufficiency of Wenig's claim without reviewing where one is in Virginia when making a claim of wrongful discharge.

In *Bowman v. State Bank of Keysville*, the Supreme Court recognized an exception to the employment at will doctrine where an employer threatens to discharge employees unless they vote their share of stock a certain way. 229 Va. 534, 539 (1985). The Court acknowledged a public policy behind the statutory provisions governing stockholder rights. That is, stockholders should be able to vote their stock free from duress or intimidation. After *Bowman*, litigants searched for public policy considerations behind various statutes to justify their wrongful discharge claims.

The Court in *Lockhart v. Commonwealth Education Systems* gave reason to litigants to think that this approach would be successful. 247 Va. 98 (1994). In that case, an employee of a college alleged her termination to have been racially motivated and in retaliation for her refusal to sanction discriminatory

policies. The Supreme Court said such allegations survived demurrer. The Court looked to the Virginia Human Rights Act ("VHRA") as the repository of the public policy relied on, that is "the General Assembly has declared this Commonwealth's strong public policy against employment discrimination based upon race or gender ... ." *Id.* at 10, citing VHRA, § 2.1-715. The Court relied on the reasoning in *Bowman* to support its decision, stating emphatically that the VHRA does not create any new causes of action.

The history of the Supreme Court rulings on this issue since *Lockhart* illustrates the Court's attempt to define and narrow the circumstances under which public policy considerations can be invoked to support a lawsuit. A federal court in *Perry v. American Home Products Corp.* succinctly summarized the history of Bowman-type litigation in Virginia and points out the confusion created by *Lockhart* in its seemingly wide open definition of public policy. No. Civ.A.3:96CV595, 1997 WL 109658, at *4 (E.D. Va. Mar. 4, 1997).

In *Lawrence Chrysler Plymouth Corp. v. Brooks*, the Supreme Court reversed a trial court judge who had upheld, with some modification, a jury verdict against the defendant in a wrongful discharge suit. 251 Va. 94 (1996). Plaintiff repaired automobiles in an automobile dealership, and the basis of his claim was his alleged discharge for refusing to do repairs he deemed to be unsafe. The Court held he had no cause of action because he was "unable to identify any Virginia statute establishing a public policy that Lawrence Chrysler violated." *Id.* at 98.

In *Doss v. Jamco, Inc.*, the Supreme Court considered a question of law certified from the United States District Court for the Western District of Virginia. 254 Va. 362 (1997). The District Court inquired whether Va. Code § 2.1-725(D) prohibits a common law cause of action based upon the public policies reflected in the VHRA. That Act had been amended by the General Assembly in 1995. Specifically, the legislators had added subsection D which provided:

> Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.

The plaintiff in *Doss* alleged that she was discharged from her employment because of her sex and her pregnancy. In response to the question presented to it, the Court answered in the affirmative "finding that, in enacting the 1995 amendments to Va. Code § 2.1-725, the General Assembly plainly

manifested an intent to abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public policies reflected in the Act ... ." *Doss*, 254 Va. at 372.

## B. *Case at Hand*

### 1. *Federal Statute*

Wenig argues that a federal statute can serve as the basis for her wrongful termination action. This argument fails in that Wenig is obliged to cite a Virginia statute to support her claim. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 98-99 (1996); *see also McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 829 (1998).

Assuming *arguendo* that a claim based on Title VII was proper, Wenig's claim would fail under *Doss* as it is based on public policies reflected in the VHRA. *See Doss*, 254 Va. at 372. Wenig alleges that the May Company created a "hostile" and "intolerable" work environment, through discrimination and retaliatory acts which forced her to resign. Under the VHRA, it is the policy of the Commonwealth of Virginia to "safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability ... in employment ... ." Va. Code § 2.1-715.

In reaching this conclusion, this Court is interpreting the decision in *Doss* in the broadest possible manner, that is, that the legislators meant to eliminate all Bowman-type actions based upon any policy set out in the VHRA. The Court in *McCarthy* explains the point:

> Special attention must be paid to the use of the word reflected in the amendments to the VHRA. The General Assembly could have said that it was abrogating all common law causes of action that were based on the VHRA; but it did not. Instead, it barred all claims that were based on policies reflected in the VHRA. The emphasis is clearly on the policies (which happen to be found in the VHRA) rather than on the statute itself.

*McCarthy*, 999 F. Supp. at 830.

## 2. *State Criminal Statutes*

The Court is directed to no authority that supports Wenig's contention that a common law claim for wrongful discharge exists based on public policies underlying Virginia Code § 18.2-57 (Assault and Battery); § 18.2-416 (Punishment for Using Abusive Language to Another); § 18.2-388 (Profane Swearing and Intoxication in Public); or §§ 18.2-499 through 18.2-501 (Conspiracy to Injure Another in Trade, Business or Profession). Wenig cites two Circuit Court opinions supporting her view, but these opinions are pre-*Doss* and they are of limited value. *See Ludwig v. T2 Medical,* 34 Va. Cir. 65 (1994) (Stevens, J.); *McBroom v. DynCorp.,* 38 Va. Cir. 109 (1995) (Klein, J.).

Generally speaking, the case law in the Bowman-type litigation presents the Court with a fundamental problem as to how public policy is to be defined by the Court. Does a statute have to "enunciate a public policy" in order to be available to a plaintiff, or is it sufficient that a cognizable policy "underlies" the statute. *See* analysis in *Leverton v. AlliedSignal, Inc.,* 991 F. Supp. 486, 492 (E.D. Va. 1998).

The criminal statutes cited with reference to the facts of this case do not provide a public policy basis to support a wrongful discharge claim under either analysis. These statutes do not enunciate a policy as does the VHRA. Nor is there a policy that underlies these statutes that relates to the facts of the case such as was present in *Bowman* when a stockholder's freedom to vote his shares was directly at issue.

Wenig alleges that ethnic slurs were made by her fellow employees and customers and that she was physically threatened. She alleges these circumstances violated the public policy behind the enactment of the criminal statutes forbidding assaultive behavior and the use of abusive language. *See* Va. Code §§ 18.2-57 and 18.2-416. She alleges alcohol abuse by Hecht employees and her punishment for reporting such behavior in violation of the public policy behind the enactment of the criminal statute forbidding profane swearing and intoxication in public. *See* Va. Code § 18.2-388. She alleges all these conditions created a hostile environment that forced her to resign.

The nature of these charges are diffuse and vague. Unlike the situation in *Bowman,* there is no connection between the alleged facts and the public policy that is direct and to the point.

The federal courts have understood the distinction between a general statute and a specific statute that conceivably could support a *Bowman* claim:

[T]o some extent, most, if not all, statutes enacted by Virginia are intended to either preserve public safety, public health or the general welfare of the citizens. Those rather general connections, even if supportable in logic, are too attenuated to be the basis of a Bowman claim given the limited nature of such claims.

*Perry*, 1997 WL 109658, at *6-7; *see also Leverton*, 991 F. Supp. at 493.

Finally, Wenig alleges that her discharge violates the public policy behind the criminal statutes forbidding combinations to injure others in their reputation, trade, business, or profession. See Va. Code §§ 18.2-499 through 18.2-501. Federal courts analyzing this issue have held that these statutes address injuries to one's business rather than to one's employment interests. *Jordan v. Hudson*, 690 F. Supp. 502, 507 (E.D. Va. 1988); *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985); *Zimpel v. LVI Energy Recovery Corp.*, 23 Va. Cir. 423 (1991) (McWeeny, J.).

Defendant's demurrer is sustained with no leave to amend.