**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK R. FOBIAN,
Plaintiff-Appellant,

v.                                                          No. 97-1477

STORAGE TECHNOLOGY CORPORATION,
Defendant-Appellee.

RALPH D. GREEN,
Plaintiff-Appellant,

v.                                                          No. 97-1822

STORAGE TECHNOLOGY CORPORATION,
Defendant-Appellee.

FRANK R. FOBIAN; RALPH D. GREEN,
Plaintiffs-Appellants,

v.                                                          No. 98-1848

STORAGE TECHNOLOGY CORPORATION,
Defendant-Appellee.

FRANK R. FOBIAN; RALPH D. GREEN,
Plaintiffs-Appellants,

v.                                                          No. 98-1849

STORAGE TECHNOLOGY CORPORATION,
Defendant-Appellee.

FRANK R. FOBIAN; RALPH D. GREEN,
Plaintiffs-Appellants,

v.                                                      No. 99-2185

STORAGE TECHNOLOGY CORPORATION,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-96-767-R, CA-96-904-R)

Argued: May 2, 2000

Decided: June 30, 2000

Before MICHAEL, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Hunt Roberts, THOMAS H. ROBERTS &
ASSOCIATES, P.C., Richmond, Virginia, for Appellants. Thamer
Eugene Temple, III, MCSWEENEY, BURTCH & CRUMP, P.C.,
Richmond, Virginia, for Appellee. **ON BRIEF:** Tim Schulte,
THOMAS H. ROBERTS & ASSOCIATES, P.C., Richmond, Vir-
ginia, for Appellants. Jack W. Burtch, Jr., MCSWEENEY, BURTCH
& CRUMP, P.C., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Frank R. Fobian and Ralph D. Green (sometimes, the"employees") brought separate actions against their former employer, Storage Technology Corporation (StorageTek or the "company"), under the Age Discrimination in Employment Act of 1967 (ADEA). In 1997 the district court granted summary judgment in both cases, and we consolidated them on appeal. While the appeal was pending, the employees filed separate Rule 60(b) motions, and the district court dismissed both motions for lack of jurisdiction. The employees then appealed the denial of their Rule 60(b) motions, and we held that a district court has jurisdiction to consider a Rule 60(b) motion even though the underlying judgment is on appeal. Fobian v. Storage Tech. Corp., 164 F.3d 887 (4th Cir. 1999). We remanded for the district court to consider the Rule 60(b) motions in this case. On remand the district court denied the motions on the merits, and the employees appealed. We now consider both the summary judgment and Rule 60(b) decisions. Finding no error, we affirm.

I.

We state the relevant facts and draw all justifiable inferences in favor of the employees, the nonmovants in the summary judgment proceedings. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255 (1986). StorageTek manufactures, installs, and maintains computer memory products. Fobian and Green worked for StorageTek in its Richmond office from 1979 until their layoffs in September 1995 and January 1996. At the time they were laid off, Fobian was 60 years old and Green was 59. They both held the position of Customer Service Engineer (CSE). James Mechtly, the Customer Service Manager, supervised all CSEs.

Fobian and Green contend that StorageTek began treating them less favorably before they were laid off. From March 1994 to March 1995 Fobian had worked alone on the night shift, performing the primary responsibilities. In March 1995 StorageTek transferred Fobian to the day shift and placed Mike Krouse, a junior CSE, in Fobian's night position. After the transfer Fobian did not have primary respon-

3

sibilities on his new shift; rather, he was assigned to work as a backup engineer.

According to Fobian and Green, StorageTek did not give them the same management training opportunities as younger CSEs. During the late summer of 1995 StorageTek selected Green to participate in a limited training program designed to make one CSE in each department familiar with management reports. After his selection, however, StorageTek removed Green from the program because he failed to follow the company's "escalation" policy. Green was on duty as acting manager when a major client had a problem with equipment maintained by StorageTek. StorageTek's escalation policy requires that this type of client problem be referred up the chain of command. Green decided that the problem did not warrant escalation. The next morning, the client contacted Bruce Duke (Mechtly's manager) about the situation. This was the first Duke heard of the problem, and, in Green's words, "Bruce got very upset because I didn't escalate the [problem]." Duke then instructed Mechtly to replace Green in the management training program. At his deposition Green said this was a "bogus" reason for removing him from the program, but he did not explain why. Fobian also testified about training disparities on two new systems. Everyone received training on one of these systems, called "Iceberg," but Fobian testified that he did not receive training on the other system, called "WolfCreek" or "Timberline." When questioned, however, Fobian could only recall one person who received this additional training and one other person who was sent to school for some type of training.

StorageTek contends that it was facing financial difficulties as early as 1993. That year, employees were required to take a five or ten percent pay cut. By May 1995 the possibility of layoffs was being discussed. The company's Richmond office had lost accounts, expenses were rising, and revenues were dropping. By electronic memorandum (e-mail) dated May 31, 1995, Mechtly advised the CSEs of these prospects. His e-mail stated, in part:

> This letter is to inform each of you of StorageTek's customer service manpower status for the Richmond Virginia territories.

4

Our area has had a declining service base over the last six months. This service base will again be negatively impacted by the closure of the Defense General Supply Center"data center" planned during the next four months.

The same manpower levels for our Customer Services team will not be needed in the immediate future. Other positions including "Customer Service Engineer," are available within other areas of StorageTek. The closest position is currently available in northern Virginia as posted on the Richmond office bulletin board and within the EMC2 Job-Openings. Any interested candidates must meet the requirements posted with the opening.

The discussion about the need to reduce "manpower levels" referred to the CSEs. A hard copy of this memorandum was also distributed to each CSE at the June 1995 CSE department meeting and delivered to the mail slot of any CSE that did not attend that meeting. Although Fobian and Green are listed on the memorandum as recipients, neither of them recalls receiving a copy in any format.

Two CSEs subsequently transferred out of the Richmond area during the late summer of 1995. Joseph Luciano, then age 40, transferred to StorageTek's offices in Colorado. According to Mechtly, "He acted on one of my department meetings when we discussed other jobs in the company; put in a job bid. He was selected. I let him go out there [to try the job] and he liked the job and he stayed." Similarly, Ralph Sibley, then age 35, put in a job bid and transferred to the company's MCI team in Maryland.

In September 1995 Mechtly and Duke decided that a layoff of two CSEs in the Richmond office was necessary. The company claims that it based its decision on annual evaluations. Mechtly performed the annual evaluations for the Richmond office. He began by completing a written evaluation form in which he assigned each employee a numerical score from 0-3 in each of 42 categories. This initial process took 15 to 20 hours. After filling out the form, Mechtly reviewed it with Duke and then met with the individual CSE. The CSE could make short written comments on the evaluation. Fobian wrote that he was satisfied with his 1995 review.

5

To decide whom to layoff, StorageTek claims it used a "formula" in which it weighted and averaged the aggregate scores for each CSE's last two annual evaluations. The employees with the lowest average aggregate scores were selected for layoff, unless a low-rated employee possessed "special skills" that higher-rated employees did not, in which case StorageTek might "keep the employee with special skills." Fobian and Donald Cherry, who had the lowest aggregate scores, were laid off in September. At the time, Fobian was the oldest CSE and Cherry the third oldest.

In December 1995 StorageTek's regional managers instructed Bruce Duke to lay off one more CSE in Richmond. Under the same criteria and formula, Green now had the lowest average aggregate score. On December 11, 1995, Mechtly advised Green of his layoff effective thirty days later.

To challenge StorageTek's claim that it relied on the evaluations, the employees presented the affidavit of Alan Dudek. Dudek, then age 53, worked as a CSE at a StorageTek facility in Maryland. A management-level e-mail identifying Dudek as among those to be laid off went out at 11:57 a.m. on September 28, 1995. Dudek states that his supervisor, Harry Granruth, did not evaluate him until later that afternoon. However, the evaluation form itself shows that Dudek and Granruth signed it on September 27, 1995, the day before the e-mail was sent.

The employees also claim that the evaluations were not a valid means for comparing CSEs. In his deposition Mechtly stated, "CSEs are not rated against each other. They're rated against 42 items in the review and goal section." His deposition testimony raised some questions about the basis for the scores. For example, employees received scores for the category covering "Parts Control--Effective maintenance, control of parts, defective parts processed in a timely manner." In evaluating this category, Mechtly did not have feedback from the logistics person, Paul Marcus, for each CSE, and Mechtly was not consistently present at the parts depot to observe the CSEs himself. CSEs also received scores for "Customer Environment--Knowledge of the customer's operations and personnel." Although these scores were purportedly based on Mechtly's observations, he could not recall

6

whether he was ever at a customer site with Fobian in the year preceding the 1995 evaluation.

The employees also claim that it was statistically improbable that StorageTek would terminate its three oldest CSEs within three months, while retaining eight younger CSEs. Green submitted his own affidavit in which he states that there is a .1 percent or 1/1000th probability of this happening without an improper motive against age. StorageTek's expert, Kathy Hoke, calculated the probability at 1/165 or .6 percent. In the same report, however, she also presented evidence on the correlation between the CSEs' rankings by age and their rankings according to the 1994 and 1995 aggregate evaluation scores. She concluded that "there is no evidence of an association between age" and evaluation scores.

On September 18, 1996, and November 7, 1996, respectively, Fobian and Green filed complaints against StorageTek alleging that they were selected for termination in violation of the ADEA.* On April 7, 1997, and May 19, 1997, the district court granted StorageTek's motions for summary judgment and dismissed the employees' actions with prejudice and without a hearing. The employees filed timely notices of appeal, and the cases were consolidated. While the appeals were pending, the employees filed motions in district court for relief from the judgment under Federal Rules of Civil Procedure 60(b)(2) and (3). The employees had learned that a number of former employees had filed an ADEA suit against StorageTek in the United States District Court for the District Court of Colorado. On November 26, 1997, the Colorado court certified an ADEA class action, finding that the Colorado plaintiffs had "provided significant evidence to support their claim that defendant engaged in a pattern and practice of discrimination." Because Fobian and Green's

_____

*The employees initially included a claim that their layoffs violated the public policy of Virginia as set out in the Virginia Human Rights Act, Va. Code Ann. §§ 2.1-714-.1-725. They have dropped this claim from their appeal. After the district court's initial decision on summary judgment, the Supreme Court of Virginia held that Va. Code Ann. § 2.1-725(D) "prohibit[s] a common law cause of action based upon the public policies reflected in the Virginia Human Rights Act." Doss v. Jamco, Inc., 492 S.E.2d 441, 442-43, 447 (Va. 1997).

7

consolidated appeal was still pending in this court (the Fourth Circuit), the district court dismissed the Rule 60(b) motions for lack of jurisdiction. The employees appealed the dismissal of their Rule 60(b) motions. We held that the district court retained jurisdiction to entertain the Rule 60(b) motions even though the underlying judgments were on appeal, and we remanded this case for further proceedings.

On remand the district court concluded that it could not evaluate the Rule 60(b) motions without reviewing documents that were under seal or protective order in the Colorado action. On March 17, 1999, the district court took the Rule 60(b) motions under advisement and issued an order requesting that the Colorado court release the documents. On August 4, 1999, the Colorado court approved the limited release of the documents which were to "remain under seal." After conducting an in camera review of the documents, the district court denied the Rule 60(b) motions on August 16, 1999. This appeal followed.

II.

We review de novo the district court's decision on summary judgment. See GTE South, Inc. v. Morrison, 199 F.3d 733, 745 (4th Cir. 1999). Under the ADEA it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Having conceded that there is no direct evidence of discrimination, the employees sought to establish their ADEA claim under the three-stage proof scheme of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir. 2000). StorageTek has conceded that the employees established their prima facie case, which is the first stage. Thus, this appeal concerns only the final two stages of the McDonnell Douglas scheme.

At the second stage of the proof scheme, the burden shifts to the employer "to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves v. Sanderson Plumbing Prods., Inc., No. 99-536, 2000 WL 743663, at *5 (U.S. June 12, 2000) (internal quotation marks and

alteration omitted). The employer's burden "is one of production, not persuasion; it can involve no credibility assessment." Id. (internal quotation marks omitted). The district court concluded that StorageTek met this burden. The company offered admissible evidence that it was experiencing financial difficulties and that it laid off those employees who had the lowest evaluation scores. We agree that StorageTek has offered a legitimate, non-discriminatory reason for the layoff. Accordingly, we move to the third stage of the McDonnell Douglas scheme.

At the third stage, "the sole remaining issue[is] discrimination vel non." Id. (internal quotation marks and citation omitted). In examining a plaintiff's evidentiary burden at this third stage, the Supreme Court recently held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at *9. The employees offered four theories to show pretext. First, they claimed that the evaluation scores were flawed. Second, they argued that it was statistically improbable that the oldest employees would be selected for termination. Third, they attempted to show pretext by offering evidence that StorageTek had already begun to treat them less favorably. Finally, they presented the affidavit of Alan Dudek, who was laid off at a StorageTek location in another state.

The district court concluded that the first three theories failed to establish any evidence of pretext and that Dudek's statements were not relevant to this case. We agree with the district court's analysis. First, although the employees may have shown that the evaluations were an unreliable tool, they produced no evidence that the evaluations were biased against older employees. Second, outside of Green's own affidavit, the employees presented no affidavits, exhibits, charts, or other evidence to support their claim that it was mathematically improbable that StorageTek would terminate the three oldest employees without reference to age. In any event, we agree with the district court that the statistical evidence "is simply too speculative to be probative." Fisher v. Asheville-Buncombe Technical College, 857 F. Supp. 465, 470 (W.D.N.C. 1993). Third, Fobian produced no evidence to support his assumption that he should have been given primary responsibility on his new shift after his March

9

1995 transfer. Nor did Fobian assert that the job paid less or that the position was viewed as a demotion. And, Green produced no evidence that StorageTek's reason for removing him from the management training program was pretextual. Fobian's testimony regarding other training opportunities was too speculative to create an issue of fact. Finally, because Dudek worked at a facility in a different state and had a different supervisor, the district court correctly concluded that his affidavit was not relevant to the employees' allegations regarding the Richmond facility. Accordingly, we conclude that the district court correctly analyzed the employees' proof under the McDonnell Douglas scheme.

III.

We review the district court's decision on the Rule 60(b) motion for abuse of discretion. See McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991). "Under all the provisions of Rule 60(b), a threshold condition for granting the relief is that the movant demonstrate that granting that relief will not in the end have been a futile gesture, by showing that she has a meritorious defense or claim." Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990). After reviewing the Colorado documents in camera, the district court determined that the employees could not make this threshold showing; the Colorado documents did not provide evidence that StorageTek's reason for laying off Fobian and Green was pretextual. We have independently reviewed the documents and find no error in the district court's decision. Accordingly, we affirm on the reasoning of the district court on this issue.

IV.

Finally, the employees argue for the first time on appeal that by conducting an in camera review, the district court limited their access to discovery materials and thus denied them the right to a fair trial. We note that the Supreme Court has held that a criminal defendant's constitutional right to a fair trial "can be protected fully by requiring that the [protected documents] be submitted only to the trial court for in camera review." Pennsylvania v. Ritchie , 480 U.S. 39, 60 (1987); see also United States v. Trevino, 89 F.3d 187, 190 (4th Cir. 1996) (noting that the "court conducts its examination in private because the

10

Constitution does not accord an accused the right of unrestricted access to the government's files"). We have also held in the civil context that a trial court did not abuse its discretion by examining documents in camera. The in camera inspection "balanc[ed] the risks of broader discovery . . . against the limited potential for revelation of useful information." In re ASI Reactivation, Inc., 934 F.2d 1315, 1324 (4th Cir. 1991). In any event, the employees did not preserve this issue for appeal. "Generally, we will not consider an issue raised for the first time on appeal, and [the employees have] not suggested any reason why we should depart from our ordinary rule in this case." Grossman v. Commissioner of Internal Revenue, 182 F.3d 275, 281 (4th Cir. 1999) (internal citation omitted).

V.

Having reviewed the record and the district court's decisions, we find no reversible error. We therefore affirm the grant of summary judgment to StorageTek and the denial of the employees' Rule 60(b) motions.

AFFIRMED