COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


VIRGINIA POLYTECHNIC INSTITUTE
   AND STATE UNIVERSITY
                                                            OPINION BY
v.        Record No. 1204-07-3            JUDGE ROBERT J. HUMPHREYS
                                                            APRIL 15, 2008
MAYNARD QUESENBERRY


              FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                            Ray W. Grubbs, Judge

              Stephen F. Capaldo, Associate University Legal Counsel (Robert F.
              McDonnell, Attorney General; Kay K. Heidbreder, University Legal
              Counsel; Mary Beth Nash, Associate University Legal Counsel, on
              briefs), for appellant.

              Jonathan Rogers (Jonathan Rogers, P.C., on brief), for appellee.


        Virginia Polytechnic Institute and State University ("Virginia Tech") appeals the

judgment of the Circuit Court of Montgomery County ("circuit court"), which reversed the

decision of an administrative hearing officer who upheld Virginia Tech's termination of an

employee for sexual harassment.  Virginia Tech asks us to reverse the judgment of the circuit

court and reinstate the hearing officer's decision, arguing that the hearing officer's decision was

not contradictory to law.  Virginia Tech also argues that the hearing officer erred in not admitting

evidence of the employee's prior misconduct.  For the reasons that follow, we affirm the

judgment of the circuit court.  We do not address Virginia Tech's second question presented, as

it is procedurally defaulted.

BACKGROUND

A.  Quesenberry's Encounter with Rebecca Hampton

The hearing officer found the following facts in his decision.  Maynard Quesenberry ("Quesenberry") was employed as a business manager at Virginia Tech responsible for overseeing the university mail system.  Quesenberry received progressive promotions during his career at Virginia Tech, and in 2004, received special recognition from the university for his suggestions to improve the university's operations.  At the time Virginia Tech terminated his employment in March 2006, Quesenberry had worked for Virginia Tech for approximately twenty-nine years.

Quesenberry also served as a volunteer coach and board member of a nearby boxing club, which is a non-profit organization intended to assist disadvantaged youth by helping them develop self-esteem and self-discipline.  In order to raise funds for the boxing club, the board members discussed the possibility of producing a boxing calendar to sell to local businesses. The proposed calendar would feature photos of attractive young women posing in the context of boxing activities.

Emmet Long ("Long") worked for Virginia Tech as the residential mail supervisor, and reported directly to Quesenberry.  Although Long was not affiliated with the boxing club, he became interested in the production of the calendar, and asked several female students if they wished to pose for the calendar.  Long later stopped asking students to pose for the calendar at Quesenberry's request.

On December 9, 2005, Quesenberry and Long were leaving the university mail room when Long told Quesenberry that he wanted to introduce him to an acquaintance of his, Rebecca Hampton ("Hampton"), and indicated that she might be interested in posing for the calendar. Hampton was a twenty-year-old female student at Virginia Tech, and an employee of We Care, a

student-run organization whose purpose was to assemble and distribute care packages around the university.  Although Hampton's superiors included full-time Virginia Tech employees, Quesenberry did not supervise Hampton.

Quesenberry and Long entered Hampton's office, and Long introduced Quesenberry as his supervisor.  Long indicated to Quesenberry that Hampton might be interested in posing for the calendar.  Quesenberry then told Hampton he was involved in the boxing club and that he was looking for models to pose for his calendar.  Quesenberry asked Hampton if she would be interested in posing for the calendar, wearing either a bathing suit or "short shorts," and assured Hampton that the photos would be done in "good taste."  During the conversation, Hampton grabbed a piece of candy, and Quesenberry admonished her not to eat it, stating "if you continue eating that, you will look like a little refrigerator with your head on top."  The total conversation lasted between eight and fifteen minutes.

Hampton felt that Quesenberry's comments toward her were inappropriate, and she also felt "objectified."  Hampton reported the incident to her supervisor, who in turn reported it to officials higher in the university hierarchy.  Virginia Tech then launched a formal investigation into the incident.  After her interaction with Quesenberry, Hampton began taking a more circuitous route to her office to avoid any further contact with Quesenberry or Long.  Hampton also began closing and locking her door with more frequency when she came to her office.  Neither Quesenberry nor Long had any further contact with Hampton after the incident.

### B.  Procedural History

Quesenberry's supervisor issued him a "Group III" written notice of discipline for the incident with Hampton, and terminated his employment with Virginia Tech, based on Quesenberry's violation of Virginia Tech Policy No. 1025, an anti-sexual harassment and

discrimination policy.[1]  Quesenberry filed a grievance, and, after exhausting internal remedies, requested a hearing.  In addition to the factual findings stated above, the hearing officer found that:

> As a result of her conversation with [Quesenberry], [Hampton] regularly began closing and locking her office door and withdrawing from communication with other employees working in offices next to her office.  By withdrawing into her office, [Hampton]'s work performance and participation in University activities was diminished.  This interference was unreasonable because the degree to which [Hampton] openly communicated with other employees was significantly reduced.  In particular, [Hampton] changed from a very extroverted outgoing employee to a secluded introverted employee.  This change materially affected her and the others around her.

The hearing officer additionally found that, all things considered, Hampton "overreacted" to Quesenberry's conduct.  The hearing officer based his finding partially on the fact that Hampton did not believe the calendar would be in "good taste" despite clear evidence that Quesenberry intended for the calendar to be tasteful.

Nevertheless, the hearing officer concluded that Quesenberry's conduct violated Virginia Tech Policy No. 1025, because "[b]y any objective standard, it was inappropriate for a female to be asked to pose wearing short shorts or a bathing suit for a calendar unrelated to the University's mission."  The hearing officer continued to state that "[a]lthough [Quesenberry]'s behavior was not sexual harassment in the legal sense because it was neither severe nor pervasive, his actions could have been a piece of the foundation of a sexual hostile work environment claim."  The hearing officer then found that Quesenberry's conduct amounted only to a "Group II" violation of university policy, but upheld Quesenberry's termination because

---

[1] A "Group III" offense is an act or behavior "of such a serious nature that a first occurrence should normally warrant removal."  Va. Department of Human Resource Management Policies and Procedures Manual § 1.60(V)(B)(3) (setting forth standards of conduct for state employees).

Quesenberry had a previous "Group II" violation on his disciplinary record.[2] Quesenberry timely appealed to the circuit court.

By order dated April 24, 2007, the circuit court reversed the hearing officer's decision as contrary to law, concluding that under "any objective standard of reasonableness, [Quesenberry]'s conduct, as complained of, was not sexual harassment." The circuit court ordered Virginia Tech to reinstate Quesenberry to his position, compensate Quesenberry for all accrued pay since the date of his termination, and reinstate all of Quesenberry's benefits as if there had been no break in service. Virginia Tech now appeals to this Court.

STANDARD OF REVIEW

In a state employee's grievance hearing, "[t]he hearing officer's decision 'shall (i) be in writing, (ii) contain findings of fact as to the material issues in the case and the basis for those findings, and (iii) be final and binding if consistent with law and policy.'" Tatum v. Va. Dep't of Agric. & Consumer Servs., 41 Va. App. 110, 121, 582 S.E.2d 452, 458 (2003) (quoting Code § 2.2-3005(D)). "[The applicable] statutes clearly provide the hearing officer is to act as fact finder and . . . [its] determination[] is [not] subject to judicial review[.]" Id. at 121-22, 582 S.E.2d at 458 (quoting Virginia Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002)). As such, the factual findings of a hearing officer are binding upon an appellate court. See id. Thus, "the only grounds of appeal of the hearing officer's decision is 'that the determination is contradictory to law.'" Id. (quoting former Code § 2.1-116.07:1(B) (recodified as amended at § 2.2-3006(B))). On appeal, Quesenberry has the burden of "identify[ing] [a] constitutional provision, statute, regulation, or judicial decision which the [hearing officer's] decision contradicts." Barton, 39 Va. App. at 446, 573 S.E.2d at 323. An

---

[2] "'Group II' offenses include acts and behavior which are more severe in nature and are such that an additional Group II offense should normally warrant removal." Va. Department of Human Resource Management Policies and Procedures Manual § 1.60(V)(B)(2).

appellate court reviews issues of law *de novo*.  Bristol v. Commonwealth, 272 Va. 568, 573, 636 S.E.2d 460, 463 (2006).

## ANALYSIS

### I.  Whether Quesenberry's Conduct Constituted Sexual Harrassment

Virginia Tech first argues that the hearing officer's decision should be reinstated because the hearing officer correctly found that Quesenberry's conduct violated Virginia Tech Policy No. 1025.  We disagree.

As stated above, we review a hearing officer's decision only to determine whether it is "contradictory to law."  Barton, 39 Va. App. at 445, 573 S.E.2d at 322.  "'Law' is the 'aggregate of legislation, judicial precedents, and accepted legal principles.'"  Id. at 446, 573 S.E.2d at 323 (quoting Black's Law Dictionary 889 (7th ed. 1999)).

Virginia Tech notes that Policy No. 1025, its official university policy prohibiting sexual harassment among university employees, comports with federal anti-discrimination law, namely Title VII of the Civil Rights Act of 1964.  Furthermore, Policy No. 1025's definitions of sexual harassment are taken directly from 29 C.F.R. 1604.11(a), the federal regulation defining sexual harassment as it pertains to Title VII.[3]  As this is a case of first impression in Virginia, and

---

[3] In oral argument, Virginia Tech argued that reference to federal cases construing Title VII should not be considered by us because "[the policy] is Virginia Tech's policy and not a Title VII case and Virginia Tech can interpret [its policy] any way it wants."  However, we note that Code § 2.2-3900, the Virginia Human Rights Act, states that:

> It is the policy of the Commonwealth to:  [] [s]afeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability, . . . in employment[.]

Furthermore, Code § 2.2-2639(D) states that:  "[c]auses of action based upon the public policies reflected in this article shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances."

because Virginia Tech has patterned its sexual harassment policy on the provisions of Title VII, we turn to judicial interpretations of Title VII and consider their persuasive merit in determining whether the hearing officer's decision that Quesenberry violated Virginia Tech Policy No. 1025 was contradictory to law.

"The concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. . . . It is not designed to purge the workplace of vulgarity." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995). The United States Court of Appeals for the Seventh Circuit has recognized a "line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing." Carr v. Allison Gas Turbine Div., 32 F.3d 1007, 1010 (7th Cir. 1994). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." Harris v. Forklift Sys, Inc., 510 U.S. 17, 21 (1993). "Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment." Jordan v. Alternative Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006).

---

In Doss v. Jamco, Inc., 254 Va. 362, 492 S.E.2d 441 (1997), the Supreme Court of Virginia interpreted Code § 2.1-725(D), the predecessor to Code § 2.2-2639(D), to prohibit causes of action for wrongful discharge from employment based upon the policies reflected in the Virginia Human Rights Act ("VHRA"). Id. at 371, 492 S.E.2d at 446. While rejecting causes of action arising from violations of the VHRA, the Court nonetheless recognized that the VHRA is an expression of Virginia public policy and that the General Assembly had intended to limit causes of action to those provided by federal or state civil rights statutes, such as Title VII. See id. Therefore, we view Code § 2.2-2639(D) as evidence that the General Assembly considered the public policies of Virginia as expressed in the VHRA to be analogous to those expressed in Title VII. Moreover, since the definition of "sexual harassment" in Virginia Tech's Policy No. 1025 is taken almost verbatim from 29 C.F.R. 1604.11(a), the Federal Regulation construing Title VII, we find it appropriate to consider Title VII jurisprudence as persuasive precedent to assist us in interpreting Virginia Tech Policy No. 1025.

In order to determine as a matter of law whether conduct falls within the purview of Title VII, reviewing courts look to the totality of the circumstances. Harris, 510 U.S. at 23. The applicable factors may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

Virginia Tech Policy No. 1025 defines sexual harassment as

> unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature when[] . . . [s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work . . . or creating an intimidating, hostile, or offensive work or academic environment.[4]

Thus, in order to discipline an employee for sexual harassment under this policy, the evidence must establish that (1) the employee made unwelcome sexual advances, requests for sexual favors, or other verbal or nonverbal conduct of a sexual nature towards a fellow employee; and (2) that conduct either had the purpose or effect of unreasonably interfering with an individual's work or created an intimidating, hostile, or offensive work or academic environment.

The first question we must answer is whether Quesenberry's proposal could be reasonably interpreted as a sexual advance, a request for a sexual favor, or other sexual conduct. After considering all of the circumstances, and using an objective standard, we conclude that a reasonable person could not consider Quesenberry's proposal to be sexual in nature.

---

[4] In defining sexual harassment as sexual "conduct [that] has the purpose or effect of unreasonably interfering with an individual's work[,]" Virginia Tech has elevated the final factor mentioned in Harris to dispositive status. Therefore, Virginia Tech Policy No. 1025 requires less egregious conduct for a finding of sexual harassment with regards to employee discipline than what a plaintiff in a Title VII sexual harassment claim is required to prove. Nevertheless, we find that even under the more relaxed standard contained in Virginia Tech's policy, it is appropriate to apply the totality of the circumstances test described in Harris to determine whether Quesenberry's conduct constituted sexual harassment.

Quesenberry approached Hampton, who was not under his supervision, on one isolated occasion and spoke to her for no more than fifteen minutes. He asked her if she would pose for a fund-raising calendar in a bathing suit or "short shorts," and assured her that the photos would be done in "good taste." He made no comments or gestures that objectively betrayed a sexual intent, and did not ask her for a date or suggest any other personal social interaction. He did not touch Hampton, nor did he make any other type of advance towards her. While a reasonable person may have found Quesenberry's proposal annoying and inappropriate, to say that an isolated proposal to pose for photographs in a bathing suit or "short shorts" for publication in a calendar necessarily contains veiled references to sex, strains credulity.

The holdings of federal courts addressing similar questions with regard to Title VII bolster this analysis. In Baskerville, the male supervisor of a female employee frequently referred to the employee as a "pretty girl," and made grunting noises that sounded like "um um um" when she wore a leather skirt to the office. 50 F.3d at 430. When she commented on how hot his office was, he replied that it was "not [hot] until you stepped your foot in here." When the announcement "may I have your attention please" was broadcast over the public-address system, he stopped at her desk and said, "You know what that means, don't you? All pretty girls run around naked." Once, when she complained that his office was "smokey" from cigarette smoke, he replied, "Oh really? Were we dancing, like in a nightclub?" During a period when the supervisor was not living with his wife, he commented that it was "lonely in his hotel room . . . and all he had for company was his pillow." He then looked provocatively at his hand, in a gesture suggesting masturbation. All of these incidents took place over a seven-month time span. Id.

The employee brought a Title VII sexual harassment claim against the company, and a jury awarded her $25,000. Id. The Seventh Circuit reversed, holding that the evidence was insufficient as a matter of law to support a Title VII claim. The court stated that

> [i]t is no doubt distasteful to a sensitive woman to have such a silly man as one's boss, but only a woman of Victorian delicacy-a woman mysteriously aloof from contemporary American popular culture in all its sex-saturated vulgarity-would find [the supervisor]'s patter substantially more distressing than the heat and cigarette smoke of which the plaintiff does not complain.

Id. at 431. The court also stressed the infrequency of the conduct, noting that a "handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." Id.

In this case, Quesenberry's comments to Hampton were even more innocuous than those made in Baskerville. While Quesenberry asked Hampton if she would pose tastefully in a bathing suit or "short shorts," the supervisor in Baskerville implied that the plaintiff in that case should "run around naked." In Baskerville, the plaintiff's supervisor used his hand to make transparent references to masturbation, while Quesenberry made no such crude gestures. While the plaintiff's supervisor in Baskerville made comments clearly expressing a personal interest in the plaintiff, Quesenberry's proposal was more detached and impersonal. Finally, Quesenberry only approached Hampton on one occasion, as opposed to numerous times over a seven-month period, as did the plaintiff's supervisor in Baskerville.

While a violation of Virginia Tech Policy No. 1025 for sexual harassment may require a lower quanta of evidence than a sexual harassment claim under Title VII, we nonetheless agree with the circuit court and conclude that Quesenberry's conduct was insufficient as a matter of law to support a violation of the policy.

Having concluded that Quesenberry's proposal was not sexual, we need not address whether the proposal had the purpose or effect of unreasonably interfering with Hampton's work.

- 10 -

Therefore, we hold that Quesenberry's proposal, as a matter of law, did not fall within the ambit of Policy No. 1025. Thus, the hearing officer's decision was contrary to law, and we affirm the judgment of the circuit court.

## II. Evidence of Prior Misconduct

Virginia Tech also argues that the hearing officer erred in not admitting evidence of Quesenberry's prior misconduct during the hearing. Virginia Tech, however, cites no authority or principles of law in support of its argument. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004) (quoting Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003)); see Rule 5A:20(e) (requiring appellants to brief the "principles of law, the argument, and the authorities relating to each question presented"). Because Virginia Tech cites no authority in support of its argument, this question is procedurally defaulted, and we will not address it.

## CONCLUSION

For the reasons stated, we agree with the circuit court and hold that the hearing officer's decision regarding Quesenberry's violation of Virginia Tech Policy No. 1025 was contradictory to law. We refrain from addressing Virginia Tech's second argument, as it is procedurally defaulted. Accordingly, we affirm the judgment of the circuit court.

Affirmed.