MARY FRANCES POWE, Employee, Plaintiff v. CENTERPOINT HUMAN SERVICES, Employer, BRENTWOOD SERVICES, Carrier, Defendants

No. COA10-1022

(Filed 6 September 2011)

**1. Workers' Compensation—vocational rehabilitation—sufficiency of findings of fact**

The Industrial Commission erred in a workers' compensation case by failing to apply the correct legal standard in determining whether plaintiff complied with vocational rehabilitation under N.C.G.S. § 97-25. When an employee is participating to some degree in vocational rehabilitation services, the Commission must determine, in deciding whether to reinstate benefits, whether the employee is substantially complying with those services and not significantly interfering with the vocational rehabilitation specialist's efforts to assist the employee in returning to suitable employment. The case was remanded for the Commission to make the required findings of fact.

**2. Workers' Compensation—vocational rehabilitation—noncooperation—temporary total disability**

On remand, the Industrial Commission in a workers' compensation case must consider why vocational rehabilitation was not being provided. If it was due to non-cooperation, then the Commission erred in reinstating temporary total disability. If the failure to continue was not due solely to non-cooperation, or if the Commission determines that vocational rehabilitation should have been continued, then temporary total disability could be reinstated.

**3. Workers' Compensation—denial of motion to admit additional evidence—not an abuse of discretion**

The Industrial Commission did not abuse its discretion in a workers' compensation case when it denied defendants' motion to admit additional evidence following their appeal to the Commission. The Commission effectively declined to consider a new ground for suspension of benefits not yet addressed by a deputy commissioner and left the issue for a subsequent hearing.

POWE v. CENTERPOINT HUMAN SERVS.

[215 N.C. App. 395 (2011)]

### 4. Workers' Compensation—Rule 802—sanctions—no finding of rules violation

Although plaintiff contended that the Industrial Commission erred in a workers' compensation case by concluding that defendants' failure to comply with certain opinions and awards of the Commission did not mandate the imposition of sanctions against defendants under Rule 802 of the Workers' Compensation Rules, this issue was not preserved. The Commission was never asked to award sanctions below and made no findings of a rules violation that would be required in order to impose sanctions under Rule 802.

Appeal by plaintiff and defendants from opinion and award entered 15 July 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 February 2011.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff.*

*Rudisill White & Kaplan, P.L.L.C., by Stephen Kushner, for defendants.*

GEER, Judge.

Both plaintiff and defendants appeal from an opinion and award entered by the Industrial Commission that found plaintiff had failed to "fully comply" with Commission-ordered vocational rehabilitation, but still reinstated disability benefits on the grounds that defendants had ceased offering vocational rehabilitation services to plaintiff. We hold that the Commission failed to apply the correct legal standard in determining whether plaintiff complied with vocational rehabilitation under N.C. Gen. Stat. § 97-25 (2009). We, therefore, remand for the Commission to make findings of fact using the standard set out in this opinion.

### Facts

On 21 May 2001, plaintiff sustained a compensable injury to her lower back and left hip while working as a Human Services Clinician III for defendant employer. On 10 January 2005, a deputy commissioner suspended plaintiff's temporary total disability benefits due to her noncompliance with vocational rehabilitation. Both parties appealed to the Full Commission, which affirmed the deputy commissioner's suspension of plaintiff's benefits. Following plaintiff's appeal, this Court affirmed the Commission's opinion and award in

*Powe v. Centerpoint Human Servs.*, 183 N.C. App. 300, 644 S.E.2d 269 (May 15, 2007) (unpublished).

Plaintiff moved to reinstate her temporary total disability benefits on 1 May 2008 asserting that she was now compliant with vocational rehabilitation. On 4 December 2008, an administrative order was entered directing defendants to reinstate temporary total disability compensation.

This matter was heard before a deputy commissioner on 24 February 2009, and the deputy entered an opinion and award 17 July 2009 finding that plaintiff had continued to be non-compliant with her vocational rehabilitation. Because, however, defendants had ceased offering vocational rehabilitation services to plaintiff, the deputy ordered defendants to reinstate plaintiff's temporary total disability compensation. Both parties appealed to the Full Commission.

On 15 July 2010, the Commission entered an opinion and award affirming the deputy commissioner's opinion and award with modifications. Commissioner Bernadine S. Ballance dissented. The Commission's opinion and award made the following findings of fact.

Plaintiff, who has a Masters of Education degree and has received additional post-graduate training at several schools, began vocational rehabilitation in June 2006 with Sonya Ellington. Ms. Ellington met with plaintiff and her attorney on a weekly or biweekly basis. She provided job leads to plaintiff weekly and required plaintiff to keep a job search log. Ms. Ellington stated that plaintiff kept her appointments and provided her with documentation indicating that she was looking for work.

Plaintiff provided the Commission with handwritten notes of her job search and testified that she had contacted more than 300 employers. The Commission found, however, that plaintiff's documentation indicated that she "sent out exactly one resume per week by mail without a cover letter and did not follow up on the submission." The Commission further found that "[a]fter originally testifying that the job search documents detailed her efforts in full, Plaintiff amended her testimony and indicated that there were additional notes she made of telephonic follow ups to her resume submissions, but that they were not included in the materials she submitted." Plaintiff had claimed that she did not know she was supposed to include the additional notes in the materials provided to the Commission.

Plaintiff also called the City of Winston-Salem each week to listen to their recorded list of potential jobs. She testified that there are 18 to 20 listings every week. Plaintiff, however, never applied for any of the jobs because, she asserted, none were appropriate for her.

Plaintiff appeared at every vocational rehabilitation meeting with a cane and requested that the use of the cane be part of her vocational plan. The Commission pointed out, however, that in surveillance videos, plaintiff did not use a cane during a shopping trip that lasted more than three hours and was able to move without any apparent difficulty throughout the trip. In addition, plaintiff acknowledged that she did not use her cane while grocery shopping. The Commission concluded that "[t]he greater weight of the evidence shows that plaintiff misrepresented her true physical capacity to Ms. Ellington, specifically with respect to her need to use a cane."

The Commission further noted that plaintiff testified she has more problems in the morning before her joints have had a chance to loosen up, and, therefore, she rarely leaves her house during the morning. She also indicated to the Commission that "she always had her vocational rehabilitation meetings in the morning, and as such was sleepy during those meetings." The Commission, however, found that "[d]espite [plaintiff's] claim that she has difficulty functioning during the morning, plaintiff never requested that her vocational rehabilitation meetings be moved to the afternoon, even though she had to drive to get to the meetings."

With respect to plaintiff's participation in vocational rehabilitation, the Commission further found that "[a]ccording to Ms. Ellington, plaintiff put up barriers to the vocational rehabilitation process." Specifically,

> [a]lthough she attended appointments, plaintiff had a variety of excuses for why she did not follow through with various suggestions made by Ms. Ellington. She indicated sometimes she did not have stamps to mail résumés. She indicated she had no computer skills, and thus could not search for work over the internet. When Ms. Ellington suggested that plaintiff utilize community resources such as the library, plaintiff indicated she did not have money for gas to get there. At one point plaintiff contended she did not have appropriate clothing for interviews, but refused to meet Ms. Ellington at Goodwill to participate in a program designed to assist individuals in that circumstance. Ms. Ellington

POWE v. CENTERPOINT HUMAN SERVS.

[215 N.C. App. 395 (2011)]

felt that plaintiff relied on her to lead the process, and that plaintiff was not developing job leads on her own.

The Commission found that Ms. Ellington decided to end plaintiff's vocational rehabilitation on or about 22 February 2008 because "she did not feel she could find work for plaintiff under the present circumstances. She felt that plaintiff's vocational rehabilitation efforts had plateaued, and that they were not effecting change in plaintiff's situation." Consequently, defendants have not provided vocational rehabilitation services to plaintiff since February 2008.

The Commission then made the following findings regarding plaintiff's compliance with the ordered vocational rehabilitation:

> 17. Plaintiff's mere attendance at meetings does not constitute *full compliance* with vocational rehabilitation. Although plaintiff claims to have done everything asked of her, based on the greater weight of the credible evidence, she has failed to make a genuine effort to locate employment and *to fully comply* with vocational rehabilitation.
>
> . . . .
>
> 19. The Full Commission finds based upon the greater weight of the evidence that plaintiff has failed to make a reasonable effort *to fully comply* with vocational rehabilitation efforts provided by defendants.

(Emphasis added.)

As for plaintiff's medical treatment, the Commission found that defendants did not provide medical treatment "to the extent contemplated" in the 2 June 2006 opinion and award, and, as a result, plaintiff has not reached maximum medical improvement ("MMI"). The Commission further determined that plaintiff had made a reasonable request that defendants assign a new authorized treating physician.

Based on these findings, the Commission concluded: "As plaintiff has not put forth a reasonable effort to fully comply with vocational rehabilitation plaintiff is prohibited from receiving temporary total disability benefits through February 22, 2008, the day in which defendants were no longer providing vocational rehabilitation." Because, however, defendants had not provided vocational rehabilitation to plaintiff since 22 February 2008, the Commission concluded that "plaintiff is entitled to temporary total disability benefits from February 23, 2008 and continuing at the rate of $461.36 per week."

The Commission then ordered that "[d]efendants shall provide to plaintiff and plaintiff shall fully comply with vocational rehabilitation."

Regarding plaintiff's medical treatment, the Commission concluded plaintiff was not at MMI and was entitled to receive medical treatment for her compensable injury that is reasonably necessary to effect a cure or provide relief or lessen the period of disability. The Commission determined that plaintiff was entitled to a change of treating physician and ordered plaintiff to designate a board-certified neurosurgeon or pain management physician of her choosing to provide medical treatment for her compensable injuries to her back, left hip, and left leg.

Both plaintiff and defendants timely appealed to this Court.

## Discussion

When this Court reviews an opinion and award of the Industrial Commission, we are "limited to two inquiries: (1) whether the findings of fact are supported by any competent evidence in the record, and (2) whether the conclusions of law are justified by the findings of fact." *Silva v. Lowe's Home Improvement*, 176 N.C. App. 229, 232, 625 S.E.2d 613, 617 (2006). The conclusions of law are reviewed de novo. *Hawkins v. Gen. Elec. Co.*, 199 N.C. App. 245, 247, 683 S.E.2d 385, 388 (2009).

I

[1] Plaintiff first argues that the Commission erred by failing to apply the proper legal standard to determine her compliance with vocational rehabilitation under N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-25[1] provides:

> The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when

---

1. In the last legislative session, the General Assembly amended N.C. Gen. Stat. § 97-25 to limit its application to only refusals of "medical compensation." 2011 N.C. Sess. Laws 287 sec. 6. The General Assembly added a new section, N.C. Gen. Stat. § 97-32.2 (2011), that addresses vocational rehabilitation. N.C. Gen. Stat. § 97-32.2(g), which applies to claims arising on or after 24 June 2011, provides: "The refusal of the employee to accept or cooperate with vocational rehabilitation services when ordered by the Industrial Commission shall bar the employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension, unless in the opinion of the Industrial Commission the circumstances justified the refusal. Any order issued by the Commission suspending compensation per G.S. 97-18.1 shall specify what action the employee should take to end the suspension and reinstate the compensation." 2011 N.C. Sess. Laws 287 sec. 13.

ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.

Under N.C. Gen. Stat. § 97-25, when a defendant meets its "burden of showing that plaintiff has unjustifiably refused to cooperate with [its vocational] rehabilitation efforts," then the Commission must suspend the plaintiff's compensation. *Sanhueza v. Liberty Steel Erectors*, 122 N.C. App. 603, 608, 471 S.E.2d 92, 95 (1996).

The statute, however, "is clear in its mandate that a claimant who refuses to cooperate with a rehabilitative procedure is only barred from receiving further compensation 'until such refusal ceases . . . .' " *Id.* (quoting N.C. Gen. Stat. § 97-25 (1991)). An opinion and award of the Commission suspending benefits "must reflect the fact that plaintiff may again be entitled to weekly compensation benefits upon a proper showing by plaintiff that he is willing to cooperate with defendants' rehabilitative efforts." *Id.* In a subsequent hearing to reinstate benefits, the *"plaintiff* must meet the threshold burden of demonstrating she is now willing to cooperate before she is entitled to have her payments resumed." *Scurlock v. Durham Cnty. Gen. Hosp.*, 136 N.C. App. 144, 151, 523 S.E.2d 439, 443 (1999).

Cases addressing N.C. Gen. Stat. § 97-25 in the context of vocational rehabilitation services have primarily involved either (1) the initial opinion and award suspending benefits or (2) an employee who is no longer receiving vocational rehabilitation because of non-cooperation, but now expresses a willingness to cooperate if services are resumed. Here, however, vocational rehabilitation continued even after compensation was suspended. The parties have cited no case and we have found none that specifically addresses the standard for determining when an employee, whose benefits were suspended, has sufficiently complied with ongoing vocational rehabilitative services to warrant reinstatement of benefits under N.C. Gen. Stat. § 97-25.

The Commission, in this case, found that "plaintiff has failed to make a reasonable effort *to fully comply* with vocational rehabilitation efforts provided by defendants." (Emphasis added.) Plaintiff argues that full compliance is the wrong standard—she contends that she need only declare that she has a "present willingness" to comply, and her benefits should then be reinstated. According to plaintiff,

under this standard, the Commission should have reinstated her benefits on 9 June 2006 when she notified the Commission and defendants in writing that she was willing to comply with vocational rehabilitation.

Plaintiff's test—a requirement that an employee merely assert a present willingness to comply—was rejected by this Court in *Alphin v. Tart L.P. Gas Co.*, 192 N.C. App. 576, 666 S.E.2d 160 (2008), *disc. review denied*, 363 N.C. 257, 676 S.E.2d 899 (2009). In *Alphin*, this Court upheld the Commission's refusal to reinstate benefits when the "plaintiff's showing of a willingness to cooperate was based almost entirely on oral and written expressions of intent unsupported by current conduct corroborating those statements." *Id.* at 592-93, 666 S.E.2d at 171. The Court held that "[i]n assessing the sincerity of plaintiff's representations, the Commission could appropriately consider, as it did, plaintiff's lack of recent conduct suggesting a willingness to cooperate and any recent conduct inconsistent with his expressed intent." *Id.* at 593, 666 S.E.2d at 171. Thus, declarations of a willingness to comply are not necessarily sufficient if deemed not credible by the Commission.

Here, since plaintiff's assertions that she was willing to comply do not require reinstatement of benefits, the question remains whether the Commission properly determined that N.C. Gen. Stat. § 97-25 requires that a plaintiff whose benefits have already been suspended must "fully comply" with vocational rehabilitation services prior to reinstatement of benefits. "Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992).

Section 97-25 provides for suspension of benefits upon "[t]he refusal of the employee to accept any . . . rehabilitative procedure when ordered by the Industrial Commission . . . ." The statute thus requires a "refusal." It is well established that "[w]here words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those words are ordinarily used." *Reg'l Acceptance Corp. v. Powers*, 327 N.C. 274, 278, 394 S.E.2d 147, 149 (1990). If, as here, there is an "absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000).

This Court in *Johnson v. Jones Grp., Inc.*, 123 N.C. App. 219, 222, 472 S.E.2d 587, 589 (1996), construed the word "refusal" as used in N.C. Gen. Stat. § 97-25 by looking at the definition of the word in the 1990 edition of *Black's Law Dictionary*:

"[T]he declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey. . . . [T]he word is often coupled with 'neglect,' as if a party shall 'neglect or refuse' to pay a tax, file an official bond, obey an order of court, etc. But 'neglect' signifies a mere omission of a duty, which may happen through inattention, dilatoriness, mistake, or inability to perform, while 'refusal' implies the positive denial of an application or command, or at least a mental determination not to comply."

(Quoting *Black's Law Dictionary* 1282 (6th ed. 1990).) This definition focuses on an intent to disobey as opposed to neglect, such as inattention or dilatoriness.

The current edition of *Black's Law Dictionary* defines "refusal" as "[t]he denial or rejection of something offered or demanded." *Black's Law Dictionary* 1394 (9th ed. 2009). *Webster's Dictionary* defines "refusal" as "rejection of something demanded, solicited, or offered for acceptance." *Webster's Third New International Dictionary* 1910 (1968). We, therefore, construe N.C. Gen. Stat. § 97-25, in accordance with the common understanding of the word "refusal," as authorizing the Commission to terminate benefits when an employee has rejected vocational rehabilitation services ordered by the Industrial Commission.

This construction is consistent with *Johnson*. In *Johnson*, this Court addressed whether the Commission could suspend the benefits of a cognitively-impaired employee for failure to cooperate with vocational rehabilitation. The Court held, based on the definition in *Black's Law Dictionary*, that " 'refusal' as employed in [N.C. Gen. Stat. § 97-25] connotes a willful or intentional act." 123 N.C. App. at 222, 472 S.E.2d at 589. The Court then explained that in order for the Commission to suspend benefits based on a cognitively-impaired employee's failure to cooperate, the Commission "must record findings that the claimant possessed the ability to think and act as a reasonable person and, notwithstanding, *willfully rebuked* defendants' treatment efforts." *Id.* at 226, 472 S.E.2d at 591 (emphasis added).

However, concluding that N.C. Gen. Stat. § 97-25 requires a rejection—or willful rebuke—of services does not resolve this appeal. In this case, we do not have a complete rejection of services. We, there-

fore, must decide when participation in some services may still amount to a rejection of services.

Here, the Commission repeatedly stated it was finding a lack of cooperation because plaintiff failed to "fully comply" with vocational rehabilitation services. A requirement of "full" compliance, however, risks continued suspension of benefits for conduct that was not willful or intentional, contrary to *Johnson.* The definition in *Johnson* of "refusal" discussed a " 'positive intention to disobey' " and distinguished conduct that amounted to inattentiveness or dilatoriness. *Johnson*, 123 N.C. App. at 222, 472 S.E.2d at 589 (quoting *Black's Law Dictionary* 1282 (6th ed. 1990)). An employee may not be "fully complying" with vocational rehabilitation and yet not be intentionally disobeying the Commission's order to cooperate. Thus, under the Commission's standard, rather than intentional disobedience as *Johnson* anticipated, suspension of benefits could occur for conduct that does not rise to or amount to a rejection of services. Such a result would not be consistent with N.C. Gen. Stat. § 97-25's focus on cessation of benefits only for a refusal of services.

On the other hand, an employee may be participating in some level of vocational rehabilitation but engage in conduct that sabotages the efforts to find him or her suitable employment. *See Brooks v. Capstar Corp.*, 168 N.C. App. 23, 30, 606 S.E.2d 696, 700 (2005) (concluding that evidence supported the Commission's finding of cooperation when the plaintiff "did not intentionally sabotage defendants' efforts to find her suitable employment"). Conduct rising to the level of sabotage—preventing the very purpose of vocational rehabilitation—would have the same effect as an outright refusal of vocational rehabilitation. Even, however, in the absence of sabotage, an employee's participation may be so minimal that the purpose of vocational rehabilitation cannot be served.

Our appellate courts have addressed an analogous situation when construing N.C. Gen. Stat. § 97-32 (2009), which provides in language similar to that of § 97-25:

> If an injured employee *refuses* employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time *during the continuance of such refusal,* unless in the opinion of the Industrial Commission such refusal was justified.

N.C. Gen. Stat. § 97-32 (emphasis added). Thus, N.C. Gen. Stat. § 97-32 resembles § 97-25 in that a refusal by the employee results in suspen-

sion of compensation until the refusal ceases unless the employee shows the refusal was justified.

The question has arisen under N.C. Gen. Stat. § 97-32 about how to handle the situation when an employee has been working for the employer in suitable employment, but is fired for misconduct unrelated to the employee's injury. In other words, the employee has not actually refused the employment, but has acted in a manner that precludes continuation of the employment. This factual scenario is called a "constructive refusal" of suitable work. *See Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). The analysis in *Seagraves* addressing constructive refusals was subsequently adopted by the Supreme Court in *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 597 S.E.2d 695 (2004).

The specific test applied in deciding whether a constructive refusal of suitable work warrants termination of benefits is not helpful in structuring a test under N.C. Gen. Stat. § 97-25, but we do find instructive the Supreme Court's reasoning in adopting the *Seagraves* test. The Court explained:

This Court's review of the *Seagraves'* test reveals that its proper application, as dictated by the Court of Appeals, can and will produce results that square with the underlying intent of our state's workers' compensation laws. In our view, the test provides a forum of inquiry that guides a fact finder through the relevant circumstances in order to resolve the ultimate issue: Is a former employee's failure to procure comparable employment the result of his or her job-related injuries or the result of the employee's termination for misconduct? In disputes like the one at bar, the critical area of inquiry into the circumstances of an injured employee's termination is to determine from the evidence whether the employee's failure to perform is due to an *inability* to perform or an *unwillingness* to perform.

. . . . In our view, any rule that would allow employers to evade benefit payments simply because the recipient-employee was terminated for misconduct could be open to abuse. Such a rule could give employers an incentive to find circumstances that would constitute misconduct by employees who were previously injured on the job. We also recognize that the current benefit scheme faces the potential for abuse by employees. If injury-related benefits continued without regard to an employee's misconduct, injured employees conceivably could commit miscon-

duct in order to be terminated without suffering the appropriate financial consequences.

*Id.* at 494-95, 597 S.E.2d at 699-700. The Court stressed the need to adopt a "test . . . intended to weigh the actions and interests of employer and employee alike." *Id.* at 495, 597 S.E.2d at 700.

The focus in constructive refusal of suitable employment cases is, therefore, on assuring that employees are awarded benefits for wage loss clearly attributable to a job-related disability, while protecting employers from liability to employees who engage in "intentional, unacceptable conduct" when employed in rehabilitative or light duty settings. *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401.

Following the rationale of constructive refusal of suitable work cases, employees participating in vocational rehabilitation should not be precluded from receiving benefits when any lack of full cooperation with vocational rehabilitation does not substantially interfere with the vocational rehabilitation professionals' ability to serve the purposes of vocational rehabilitation. On the other hand, employers should not be required to pay benefits to employees whose intentional conduct significantly interferes with the vocational rehabilitation professional's efforts to return the employee to suitable employment and, therefore, amounts to a refusal of ordered vocational rehabilitation services. *See* N.C. Ind. Comm. R. Rehabilitation Professionals, Rule III(E), 2011 Ann. R. N.C. 1158 (defining goal of vocational rehabilitation as being to "assist[] injured workers to return to suitable employment").

We, therefore, hold that when an employee is participating to some degree in vocational rehabilitation services, the Commission must determine, in deciding whether to reinstate benefits, whether the employee is substantially complying with those services and not significantly interfering with the vocational rehabilitation specialist's efforts to assist the employee in returning to suitable employment. Because the Commission based its decision on plaintiff's failure to "fully comply," the Commission made its findings of fact under a misapprehension of law.

We must, therefore, reverse the opinion and award and remand for further findings of fact under the correct legal standard. *See Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) ("If the conclusions of the Commission are based upon a deficiency of evidence or misapprehension of the law, the case should be remanded so 'that the

evidence [may] be considered in its true legal light.' " (quoting *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939))).

II

[2] Defendants contend that once the Commission determined that plaintiff had not cooperated with vocational rehabilitation services, it erred by then concluding that "as defendants have not provided vocational rehabilitation to plaintiff since February 22, 2008, plaintiff is entitled to temporary total disability benefits from February 23, 2008 and continuing . . . ." Because this issue may arise again on remand, we address it even though we have remanded for further findings of fact on the issue of cooperation.

In support of its conclusion of law regarding reinstatement of benefits, the Commission made the following finding of fact:

> 15. On or about February 22, 2008, Ms. Ellington made the decision to end plaintiff's vocational rehabilitation, *as she did not feel she could find work for plaintiff under the present circumstances.* She felt that plaintiff's vocational rehabilitation efforts had plateaued, and that they were not effecting change in plaintiff's situation. Accordingly, Ms. Ellington has not met with plaintiff since February 2008. She indicated plaintiff has a number of skills that would be useful to an employer, including quite a bit of education and relevant work experience. Defendants have not provided vocational rehabilitation services to plaintiff since February 2008.

(Emphasis added.)

Defendants argue that Ms. Ellington recommended termination of services because of "the 'barriers' put up by Plaintiff" and claims that "[t]he cessation of vocational rehabilitation services to Plaintiff was based entirely on Plaintiff's continued non-compliance with vocational rehabilitation." Significantly, however, defendants have included no citations to the record in support of these assertions. In fact, we cannot determine from the Commission's finding of fact why vocational rehabilitation services were ceased—the finding of fact is ambiguous.

The Commission does not specifically identify the "present circumstances" that caused Ms. Ellington to feel she could not find work for plaintiff. While one possibility would be plaintiff's lack of cooperation, other possibilities include the economy, the economy combined with the nature of plaintiff's disability, or some other factor out-

side of plaintiff's control. The fact that efforts had "plateaued" or that efforts were not making a change in plaintiff's situation does not necessarily mean that the Commission found that services ended because of the lack of cooperation by plaintiff. On remand, the Commission must resolve this ambiguity and make a finding as to why vocational rehabilitation was ceased by Ms. Ellington.

With respect to the question whether the Commission may conclude both that plaintiff failed to cooperate with vocational services (under the above standard) and reinstate temporary total disability benefits, plaintiff has acknowledged that the Commission's ordering reinstatement of benefits only after defendants terminated vocational rehabilitation "is not logical and does not comply with N.C. Gen. Stat. § 97-25." Instead of citing authority permitting the Commission's approach—we have found none—plaintiff repeats her arguments that the Commission erred in determining that she had failed to cooperate. She also argues that she should not have been required to participate in vocational rehabilitation in the first place, an argument foreclosed by this Court's prior opinion.

Plaintiff, however, also cites *Sykes v. Moss Trucking Co.*, 199 N.C. App. 540, 685 S.E.2d 1, *remanded for reconsideration*, 363 N.C. 743, 689 S.E.2d 378 (2009), as holding that vocational rehabilitation services may be provided only under the supervision of an authorized physician. She argues that "because (1) [plaintiff] was not under the care of an authorized physician, and (2) there was no authorized treating physician to oversee her vocational rehabilitation, thus, the employer could not offer vocational rehabilitation services to [plaintiff]." She then concludes that because defendants could not offer vocational rehabilitation services, the Commission properly reinstated benefits.

On remand, however, from the Supreme Court, the *Sykes* panel reached an entirely different result, and it is questionable whether the initial decision remains precedent. *See Sykes v. Moss Trucking Co.*, ___ N.C. App. ___, ___ S.E.2d ___, 2011 N.C. App. LEXIS 1668, 2011 WL 3276678 (Aug. 2, 2011) (unpublished). In any event, *Sykes* did not hold that vocational rehabilitation services may only be provided under the supervision of an authorized treating physician. Instead, the Court reached its conclusion based on a particular order entered in that case: "*According to the 1 October 1999 order*, defendants' vocational rehabilitation efforts to allow plaintiff to return to the work force should be made under the supervision of plaintiff's autho-

rized treating physician." 199 N.C. App. at 547-48, 685 S.E.2d at 6 (emphasis added). Plaintiff points to no similar order in this case.

In fact, the order at issue, here, does not require physician supervision, and *Sykes* does not suggest that physician supervision is required in all cases. Plaintiff offers no other support for her contention, and, therefore, we reject plaintiff's suggested basis for upholding the Commission's reinstatement of plaintiff's benefits.

On remand, the Commission must consider why vocational rehabilitation was not being provided. If it was due to non-cooperation, then the Commission erred in reinstating temporary total disability. If the failure to continue vocational rehabilitation was not due solely to non-cooperation, or if the Commission determines that vocational rehabilitation should have continued, then temporary total disability could be reinstated. The factual issue must be resolved in the first instance by the Commission.

III

[3] Defendants next contend that the Commission abused its discretion when it denied defendants' motion to admit additional evidence. This evidence included surveillance videotape taken after the hearing before the deputy commissioner and documentation regarding plaintiff's failure to attend an independent medical evaluation ("IME"). " 'Ordinarily, the question of whether to reopen a case for the taking of additional evidence rests in the sound discretion of the Industrial Commission, and its decision will not be disturbed on appeal in the absence of an abuse of discretion.' " *Guy v. Burlington Indus.*, 74 N.C. App. 685, 688, 329 S.E.2d 685, 687 (1985) (*quoting Schofield v. Tea Co.*, 299 N.C. 582, 596, 264 S.E.2d 56, 65 (1980)).

With respect to the videotaped surveillance, defendants had already submitted video of plaintiff shopping, going to church, and walking to and from her car. As for the additional video, defendants acknowledge that "[p]erhaps [the Commission] felt that the surveillance materials offered were duplicative of the materials previously submitted. If so, and given that the Full Commission found Plaintiff to be non-compliant with vocational rehabilitation, Defendants would concede that point." In light of defendants' concession and given that the Commission found, based on the existing video, that plaintiff had misrepresented her physical capacity to Ms. Ellington, we can find no abuse of discretion in the Commission's refusal to admit the additional video surveillance materials.

POWE v. CENTERPOINT HUMAN SERVS.

[215 N.C. App. 395 (2011)]

Defendants primarily argue that the Commission abused its discretion in excluding documentation regarding defendants' scheduling of an IME after the hearing before the deputy commissioner and plaintiff's failure to attend that examination. Defendants assert that the IME evidence showed that defendants were attempting to get plaintiff evaluated, and she was refusing to cooperate. Defendants point to the Commission's finding that defendants failed to provide medical treatment to plaintiff following the 2 June 2006 opinion and award and argue that the IME evidence "was certainly relevant to and probative of this issue." We disagree.

The hearing before the deputy commissioner took place on 24 February 2009 and his opinion and award was filed 17 July 2009. The IME was scheduled for 21 October 2009. We fail to see how evidence that defendants scheduled an IME eight months after the hearing is relevant to whether defendants provided medical treatment between 2 June 2006 and the hearing before the deputy commissioner.

Defendants further argue that plaintiff's failure to attend the IME "provided an entirely new ground for the suspension of her benefits." With respect to this issue, defendants argued to the Commission that "[i]f the Commission fails to consider Plaintiff's behavior since the hearing when reaching its decision, defendants' only recourse would be to file yet another Form 33 once the Full Commission has issued a decision." We cannot conclude, under the circumstances of this case, that the Commission abused its discretion when it effectively declined to consider a new ground for suspension of benefits not yet addressed by a deputy commissioner and left the issue for a subsequent hearing. We, therefore, hold that the Commission did not err in denying defendants' motion to admit additional evidence following their appeal to the Commission.[2]

IV

[4] Finally, plaintiff contends that the defendants' failure to comply with certain opinions and awards of the Commission mandates the imposition of sanctions against the defendants pursuant to Rule 802 of the Workers' Compensation Rules. Yet, before the deputy commissioner, and, according to the Form 44, before the Commission, plaintiff did not ask for sanctions, but rather requested an order to show cause why defendants should not be held in contempt.

---

2. Defendants also contend that plaintiff failed to meet her burden of proving that she is disabled under N.C. Gen. Stat. § 97-2(9) (2009). Because this determination may be affected by the Commission's findings of fact on remand, we do not address it on appeal.

"Proceedings for civil contempt are by motion pursuant to G.S. 5A-23(a1) . . . ." N.C. Gen. Stat. § 5A-23(a) (2009). "To initiate a proceeding for civil contempt under N.C. Gen. Stat. § 5A-23(a), an interested party must move the trial court to issue an order or notice to the alleged contemnor to appear at a specified reasonable time and show cause why he should not be held in civil contempt." *Young v. Mastrom, Inc.*, 149 N.C. App. 483, 484, 560 S.E.2d 596, 597 (2002) (internal quotation marks omitted). As this Court has previously held, "[t]he purpose of civil contempt is to coerce the defendant to comply with a court order, not to punish him." *Scott v. Scott*, 157 N.C. App. 382, 393, 579 S.E.2d 431, 438 (2003).

In her argument on appeal, however, plaintiff is not seeking to coerce defendant into complying with the Commission's orders. She is instead seeking to punish defendants for their lack of compliance—she is seeking sanctions. Sanctions in a workers' compensation matter are awarded pursuant to Rule 802 of the Workers' Compensation Rules, which provides:

> Upon failure to comply with any of the [Workers' Compensation] rules, the Industrial Commission may subject the violator to any of the sanctions outlined in Rule 37 of the North Carolina Rules of Civil Procedure, including reasonable attorney fees to be taxed against the party or his counsel whose conduct necessitates the order.

Workers' Comp. R. of N.C. Indus. Comm'n 802, 2011 Ann. R. N.C. 1073.

Asking the Commission to hold a hearing to determine if defendants are in contempt pursuant to N.C. Gen. Stat. § 5A-23 is not the same as asking for sanctions against defendants pursuant to Rule 802. " 'This Court has long held that issues and theories of a case not raised below will not be considered on appeal.' " *Venters v. Albritton*, 184 N.C. App. 230, 239, 645 S.E.2d 839, 845 (2007) (quoting *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001)). Furthermore, "[t]he 'law does not permit parties to swap horses between courts in order to get a better mount' on appeal." *Floyd v. Exec. Pers. Grp.*, 194 N.C. App. 322, 329, 669 S.E.2d 822, 828 (2008) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

On appeal, plaintiff has not argued that the Commission erred in failing to hold a contempt hearing or in failing, after a hearing, to hold defendants in contempt. Instead, she argues that the Commission should have ordered sanctions. The Commission was never asked to

award sanctions below and made no finding of a rules violation that would be required in order to impose sanctions under Rule 802. The issue of sanctions was not preserved, and we do not address it.[3]

Reversed and remanded.

Judges STEPHENS and McCULLOUGH concur.

---

3. Plaintiff also contends that the Commission violated her constitutional rights when it "demonstrated a clear disqualifying personal bias against her and in favor of defendants." Plaintiff did not raise this issue before the Commission, and "[i]t is well established that 'a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal.' " *State v. Williams*, 201 N.C. App. 161, 172, 689 S.E.2d 412, 418 (2009) (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982)). We also do not consider bias on appeal when a party has not raised it below. *See State v. Key*, 182 N.C. App. 624, 632-33, 643 S.E.2d 444, 450-51 (2007) (holding that issue of bias was not properly preserved where defendant made no motion to recuse trial judge); *State v. Love*, 177 N.C. App. 614, 627-28, 630 S.E.2d 234, 243 (2006) (holding issue of bias not properly preserved where defendant made "no request, objection or motion" at trial for judge to recuse herself).