Timbercreek Land & Timber Co. v. Robbins, 2017 NCBC 64.

STATE OF NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 140

TIMBERCREEK LAND & TIMBER
COMPANY, LLC, and MYLESS RAY
HOOPER, JR.,

             Plaintiffs,

v.

JOHN THOMAS ROBBINS;
FALLING OAK ENTERPRISES,
LLC, a North Carolina Limited
Liability Company; and FALLING
OAK TIMBER, LLC, a North
Carolina Limited Liability Company,

             Defendants.

**ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION
TO DISMISS**

1.     **THIS MATTER** is before the Court on Defendants John Thomas Robbins ("Robbins"), Falling Oak Enterprises, LLC ("Falling Oak Enterprises"), and Falling Oak Timber, LLC's ("Falling Oak Timber") (collectively, the "Defendants") partial motion to dismiss (the "Motion"). Having considered the Motion, the briefs, and the arguments of counsel at a hearing on the Motion, the Court **GRANTS in part** and **DENIES in part** the Motion.

*Holton Law Firm, by Stephen C. Holton, for Plaintiffs.*

*Bell, Davis & Pitt, P.A., by Bradley C. Friesen and Adam T. Duke, for Defendants.*

Robinson, Judge.

# I.     PROCEDURAL HISTORY

2.     The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

3.     Plaintiffs Timbercreek Land & Timber Company, LLC ("Timbercreek") and Myless Ray Hooper, Jr. ("Hooper") (collectively, the "Plaintiffs") initiated this action on January 24, 2017 by filing their Complaint and Motion for Preliminary Injunction (the "Complaint").

4.     This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated February 2, 2017 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated February 7, 2017.

5.     On March 15, 2017, the Court held a hearing on Plaintiffs' motion for preliminary injunction.  Following that hearing, and prior to the Court's determination of Plaintiffs' motion, the parties notified the Court on March 23, 2017 that the parties had resolved all issues in connection with Plaintiffs' motion and, as a result, the Court denied the motion as moot by order dated March 24, 2017.

6.     Defendants filed an answer to the Complaint on March 27, 2017 and an amended answer and counterclaims on April 26, 2017.

7.     On May 5, 2017, Defendants filed the Motion pursuant to Rules 12(b)(6) and 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)").

8.     On June 23, 2017, Plaintiffs filed a reply to Defendants' counterclaims.

9.     The Motion has been fully briefed, and the Court held a hearing on the Motion on July 18, 2017.  The Motion is now ripe for resolution.

## II.     FACTUAL BACKGROUND

10.     The Court does not make findings of fact on the Motion, but only recites those factual allegations of the Complaint that are relevant and necessary to the Court's determination of the Motion and accepts them as true for the purposes of deciding the Motion.

11.     Timbercreek is a North Carolina limited liability company ("LLC") with its principal place of business in Davidson County, North Carolina.  (Compl. ¶ 1.) Timbercreek is engaged in the timber and lumber business throughout the Piedmont Triad region of North Carolina.  (Compl. ¶ 18.)

12.     Hooper is a manager and the sole member of Timbercreek.  (Compl. ¶¶ 13–14.)

13.     Falling Oak Timber and Falling Oak Enterprises are North Carolina LLCs, having their respective principal places of business in Davidson County and Randolph County, North Carolina.  (Compl. ¶¶ 4–5.)

14.     Robbins is the sole member-manager of both Falling Oak Timber and Falling Oak Enterprises.  (Compl. ¶¶ 35, 42.)

15.     Before August 2009, Hooper and Robbins discussed entering into a business in the commercial timber industry.  (Compl. ¶ 9.)  Robbins represented to Hooper that Robbins had substantial experience in and knowledge of North Carolina's commercial timber business.  (Compl. ¶ 10.)  Hooper represented to Robbins that Hooper had no

knowledge of the timber business, but that he would fund such a business while relying entirely on Robbins to exclusively manage and conduct the day-to-day operations of the business. (Compl. ¶¶ 11, 19.) Plaintiffs allege that Robbins so agreed. (Compl. ¶¶ 11, 19.)

16. On August 18, 2009, Hooper formed Timbercreek, and Hooper, as Timbercreek's sole member, entered into an Operating Agreement with Timbercreek. (Compl. ¶¶ 12–13.) The Operating Agreement provides that Timbercreek shall be managed by its sole member, Hooper. (Compl. Ex. A, § 6.1.) The Operating Agreement is signed by Hooper as member and manager. (Compl. Ex. A.)

17. Also on August 18, 2009, the Complaint alleges that Hooper, pursuant to his authority to select Timbercreek's agents and employees, hired Robbins and delegated to Robbins the authority to act on Timbercreek's behalf in performing a broad range of duties. (Compl. ¶ 16.) Consistent with this allegation, after the signature page of the Operating Agreement appears a document titled "Action of the Sole Member of [Timbercreek]" (the "Action"). (Compl. Ex. A.) The document states: "Pursuant to [Timbercreek]'s operating agreement [Robbins] is appointed as a Manager of [Timbercreek] and has the authority to act on behalf of [Timbercreek] to perform" multiple specifically enumerated duties, including: (1) to sign and issue checks in Timbercreek's name; (2) to endorse, cash, and deposit checks payable to Timbercreek; (3) to execute and deliver any note, deed of trust, other obligation, or contract and to renew the same from time to time; (4) to access any safe, lockbox, or place of safekeeping and remove Timbercreek's property therefrom; (5) to collect, by

suit or otherwise, and negotiate settlement of any indebtedness that is or may be owed to Timbercreek; (6) to negotiate and contract with third parties on behalf of Timbercreek for the purchase, sale, or brokering of timber or real property; (7) to execute and deliver any deed, assignment, or contract for the transfer of timber or real property owned by Timbercreek; and (8) any other act that may be required in the normal course of Timbercreek's business. (Compl. Ex. A.) The Action is signed by Hooper and dated August 18, 2009. (Compl Ex. A.)

18. The Complaint alleges that Hooper provided all of Timbercreek's financing while Robbins was entrusted with the exclusive day-to-day operation and management of Timbercreek. (Compl. ¶¶ 17, 25.)

19. Plaintiffs contend that Robbins, on behalf of Timbercreek, issued checks to loggers and log haulers for amounts exceeding what they were owed in exchange for cash payments to Robbins in the amount of the excess funds. (Compl. ¶ 30.) The Complaint alleges that from 2013 to 2016, Robbins, on Timbercreek's behalf, made four overpayments, purportedly for logging services, to Josh Leonard Logging and Max Montgomery d/b/a Montgomery Sawmill totaling $215,036.39, and seven overpayments, purportedly for log and chip hauling, to Craig Whitley d/b/a Tim Whitley Hauling totaling $545,370.86. (Compl. ¶¶ 31–32.)

20. On January 1, 2014, Robbins formed Falling Oak Timber without Hooper's knowledge. (Compl. ¶ 34.) Since forming Falling Oak Timber and continuing through at least June 2016, Plaintiffs allege that Robbins used Falling Oak Timber to acquire and own title to certain land and timber deeds in the Piedmont Triad area and to

carry out logging and timber operations on such land in direct competition with Timbercreek. (Compl. ¶¶ 36–37.) The Complaint identifies seventeen timber deeds and one general warranty deed that Robbins purchased on behalf of Falling Oak Timber. (Compl. ¶ 37.) Plaintiffs contend that Robbins could and should have purchased such deeds on Timbercreek's behalf. (Compl. ¶ 37.) Additionally, the Complaint alleges that Robbins used Timbercreek's property, including its logging machinery, equipment, and vehicles, to conduct logging operations on behalf of Falling Oak Timber. (Compl. ¶ 39.)

21. On or about April 1, 2015, Robbins told Hooper that it would be in Timbercreek's best interests if Robbins formed his own LLC, Falling Oak Enterprises, for the sole purpose of cutting timber for Timbercreek's benefit. (Compl. ¶ 40.) Accordingly, Robbins formed Falling Oak Enterprises that same day. (Compl. ¶ 41.) At that time, Hooper still had no knowledge that Robbins had formed Falling Oak Timber in January 2014. (Compl. ¶ 41.)

22. After forming Falling Oak Enterprises, Plaintiffs allege that Robbins, without Hooper's knowledge, purported to transfer ownership of Timbercreek's logging machinery, equipment, and vehicles to Falling Oak Enterprises. (Compl. ¶ 43.) Robbins then used such property to conduct timber operations on behalf of Falling Oak Timber and simultaneously ceased using it to conduct timber operations for the benefit of Timbercreek. (Compl. ¶¶ 44–45.)

23. At some point thereafter, Hooper learned that Timbercreek was operating at a loss and failing to locate any new timberlands or timber deeds. (Compl. ¶ 47.)

When Hooper raised the issue with Robbins, Robbins informed Hooper that the land Robbins had investigated only had invaluable timber and thus Timbercreek was not purchasing the rights to harvest timber from those properties. (Compl. ¶ 48.) Unbeknownst to Hooper, however, numerous tracts of land Robbins had investigated did have valuable timber, which Robbins was purchasing at an attractive price on behalf of Falling Oak Timber. (Compl. ¶ 49.)

24. In order to seek new business opportunities, Timbercreek decided to engage in a bulk mailing. (Compl. ¶ 50.) At Robbins's advisement, Hooper contacted AlphaGraphics to design brochures advertising Timbercreek's services. (Compl. ¶ 51.) In March 2016, Timbercreek paid AlphaGraphics just over $10,500 to design, print, and mail 20,000 brochures to targeted recipients, all of whom were owners of potentially harvestable tracts of timberlands in the Piedmont Triad area, with the expectation that Timbercreek would contract for the rights to remove and sell timberland from the recipients' land. (Compl. ¶ 52.)

25. Many of the recipients contacted Robbins with an interest in contracting with Timbercreek. (Compl. ¶ 54.) The Complaint alleges that, despite Timbercreek's ability to take advantage of these opportunities, Robbins failed to inform Hooper or Timbercreek of such opportunities and instead purchased fee simple title to the tracts of land and timber deeds on behalf of Falling Oak Timber. (Compl. ¶¶ 55–56.) Thereafter, Falling Oak Timber used Timbercreek's property to harvest and sell the timber for a profit. (Compl. ¶ 55.)

26. Timbercreek terminated Robbins on August 3, 2016. (Compl. ¶ 57.)

27.     Plaintiffs assert claims against all Defendants for claim and delivery and injunctive relief, and claims against Robbins for breach of fiduciary duty, constructive fraud, and civil arrest.  (Compl. 24, 27, 29–30.)  Timbercreek separately asserts a claim against all Defendants for conversion.  (Compl. 21–22, 25.)

28.     The Motion seeks to dismiss both Plaintiffs' breach of fiduciary duty claims and constructive fraud claim, and, to the extent brought by Hooper, Plaintiffs' claims for claim and delivery, injunctive relief, and civil arrest.

## III.     LEGAL STANDARD

29.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations of the Complaint in the light most favorable to Plaintiffs.  The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory."  *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  The Court construes the Complaint liberally and accepts all allegations as true.  *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

30.     Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim."  *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).  Otherwise, "a complaint should not

be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

31. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). A "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862. The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## IV. ANALYSIS

32. As a preliminary matter, the Court notes that the Motion is brought pursuant to both Rules 12(b)(6) and 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c). A Rule 12(c) motion may only be made after the pleadings are closed. *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 706 (2007) ("[A] Rule 12(c) motion cannot be filed simultaneously with an answer."). Defendants filed the Motion on May 5, 2017—nine days after they filed their amended answer and counterclaims. Plaintiffs timely filed their reply to Defendants' counterclaims on June 23, 2017. As

such, the Motion was filed before the pleadings were closed and, accordingly, the Court considers the Motion as one made solely pursuant to Rule 12(b)(6).

## A. Timbercreek's Breach of Fiduciary Duty Claim (First Cause of Action)

33. Defendants argue that the Complaint fails to sufficiently allege a fiduciary relationship between Robbins and Timbercreek and, accordingly, Timbercreek's breach of fiduciary duty claim must be dismissed. (Br. Supp. Defs.' Mot. Partially Dismiss Pls.' Compl. 9–13.)

34. In order to state a claim for breach of fiduciary duty, a plaintiff must allege that: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to plaintiff. *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006). Under the North Carolina Limited Liability Company Act (the "Act"), an LLC's managers and company officials owe fiduciary duties to the LLC to discharge their duties in good faith, with the care of an ordinary prudent person, and in the best interests of the LLC. N.C. Gen. Stat. § 57D-3-21(b) (setting forth the duties of a manager); *id.* § 57D-3-23 (providing that company officials who are not managers have the same duties as managers); *see Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009). The Act defines a "company official" as "[a]ny person exercising any management authority over the limited liability company whether the person is a manager or referred to as a manager, director, or officer or given any other title." N.C. Gen. Stat. § 57D-1-03(5).

35.     Defendants argue that the allegations of the Complaint are insufficient to state that Robbins was a manager or company official of Timbercreek.  Specifically, Defendants argue that the Action appointing Robbins as a manager is ineffective because it contradicts the express terms of the Operating Agreement.  Defendants further argue that Hooper's delegation of tasks to Robbins does not transform Robbins into a company official.  (Br. Supp. 9–13; Reply Br. Supp. Defs.' Mot. Partially Dismiss Pls.' Compl. 3–4.)

36.     While the Operating Agreement states that it shall be managed by the member, Hooper, (Compl. Ex. A, § 6.1), the Operating Agreement also provides that it may be amended or altered by the written consent of Hooper, (Compl. Ex. A, § 13.1).  Thus, the Court cannot conclude that the Action appointing Robbins as a manager contradicts the express terms of the Operating Agreement, and thus is ineffective, as Defendants contend.

37.     Even if the Court were to conclude that the allegations of the Complaint are insufficient to state Robbins was a manager of Timbercreek, the Court concludes that the allegations are sufficient to state that Robbins was a company official and, as such, owed fiduciary duties to Timbercreek.

38.     When interpreting a statute, the Court's primary task is to ensure that the legislature's purpose is accomplished. *In re Advance Am., Cash Advance Ctrs. of N.C., Inc.*, 189 N.C. App. 115, 118, 657 S.E.2d 405, 408 (2008).  The legislature's purpose is first ascertained from the plain words of the statute, which are to be given their plain and ordinary meaning. *Id.*  "In the absence of a contextual definition, courts may look

to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000); *Powe v. Centerpoint Human Servs.*, 215 N.C. App. 395, 402, 715 S.E.2d 296, 302 (2011) (looking to both *Black's Law Dictionary* and *Webster's Dictionary* in interpreting words within a statute).

39.     A "company official" is defined as any person—regardless of his title—"exercising any management authority over the [LLC]." N.C. Gen. Stat. § 57D-1-03(5). The current edition of *Black's Law Dictionary* defines "management" as "[t]he people in an organization who are vested with a certain amount of discretion and independent judgment in managing its affairs" and "[t]he act or system of controlling and making decisions for a business[.]" *Black's Law Dictionary* (10th ed. 2014). *Webster's Dictionary* defines "management" as "the conducting or supervising of something (such as a business)" and "the collective body of those who manage or direct any enterprise or interest[.]" *Webster's Third New International Dictionary* 1372 (1981). *Black's Law Dictionary* defines "authority" as "[t]he official right or permission to act" and "the power delegated by a principal to an agent[.]" *Black's Law Dictionary* (10th ed. 2014). *Webster's Dictionary* defines "authority" as "delegated power over others" and "freedom granted by one in authority[.]" *Webster's Third New International Dictionary* 146 (1981).

40.     The Complaint sufficiently alleges that Robbins had permission to control and make decisions for Timbercreek and was vested with discretion and independent judgment in managing and operating its business. The Complaint alleges that

Robbins was "entrusted with the exclusive day-to-day operation, care, custody, *control and management* of Timbercreek[.]" (Compl. ¶ 25 (emphasis added).) Further, the Complaint alleges that Hooper hired Robbins and delegated to Robbins the authority, which Robbins exercised, to act on behalf of Timbercreek in performing a broad range of duties, including signing and issuing checks in Timbercreek's name; cashing and depositing monies payable to Timbercreek; negotiating and executing contracts, notes, and deeds on Timbercreek's behalf; collecting and negotiating settlement of indebtedness owed Timbercreek; selecting, supervising, and paying Timbercreek personnel and subcontractors; and supervising Timbercreek's day-to-day operations. (Compl. ¶¶ 16, 23, Ex. A.)

41. The Court concludes that these allegations are sufficient, at the Rule 12(b)(6) stage, to state that Robbins was a company official as that term is defined in N.C. Gen. Stat. § 57D-1-03(5) and, as such, owed fiduciary duties to Timbercreek. The Complaint sufficiently alleges that Robbins breached his fiduciary duties to Timbercreek by embezzling Timbercreek's funds, transferring Timbercreek's property to Falling Oak Timber and Falling Oak Enterprises, and failing to act in Timbercreek's best interests. Therefore, the Motion as to Timbercreek's claim for breach of fiduciary duty is denied.

B. **Hooper's Breach of Fiduciary Duty Claim (Second Cause of Action)**

42. Defendants argue that the Complaint fails to sufficiently allege that Robbins owed Hooper a special duty such that Hooper may assert an individual claim for breach of fiduciary duty. (Br. Supp. 13−15; Reply Br. 6−9.) Defendants further

argue that Hooper has failed to allege a fiduciary relationship between Robbins and Hooper. (Br. Supp. 13–15; Reply Br. 4–6.)

43. It is a well-settled principle of North Carolina law that shareholders of a corporation cannot pursue individual causes of action for wrongs or injuries to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 338 (N.C. Ct. App. 2016). There are two exceptions: (1) when there is a special duty between the wrongdoer and the shareholder; and (2) when the shareholder suffered an injury separate and distinct from the injury suffered by the corporation and the other shareholders. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219; *Corwin*, 796 S.E.2d at 338; *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *14–15 (N.C. Super. Ct. Dec. 7, 2015) (stating that for purposes of whether a member of an LLC can assert an individual claim, "members of an LLC are treated like corporate shareholders and managers are similar to directors"); *see* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[5] (7th ed. 2016) ("A derivative action on behalf of an LLC will be governed by essentially the same rules that apply to a derivative action on behalf of a corporation. Therefore, whether the member must bring the suit individually or on behalf of the LLC turns on whether the alleged injuries were caused directly to the member or are a consequence of breaches of fiduciary duty that harmed the LLC." (footnote omitted)).

44. For the special duty exception to apply, "the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual"—a duty that

was personal to the shareholder and separate and distinct from the fiduciary duty owed to the corporation. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. In *Barger*, our Supreme Court set forth an illustrative, non-exclusive list of situations in which a special duty may be found. Such list included when the wrongful actions of the party induced plaintiff to become a shareholder, the wrongdoer violated his fiduciary duty to the shareholder, the wrongdoer performed individualized services directly for the shareholder, and the wrongdoer undertook to advise shareholders independently of the corporation. *Id.*

45. For the special injury exception to apply, the injury must be peculiar or personal to the shareholder. *Id.* "[A] plaintiff must show that its particular injury was 'separate and distinct from the injury sustained by the other shareholders or the corporation itself.'" *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 702 (N.C. Ct. App. 2016) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).

46. Plaintiffs argue that they have sufficiently alleged that Robbins owed Hooper a special duty because Robbins induced Hooper to form and become a member of Timbercreek and Hooper is a guarantor of Timbercreek's obligations on numerous pieces of equipment. (Pls.' Resp. Br. Opp'n Defs.' Partial Mot. Dismiss 20−22.) The Complaint, however, does not contain such allegations. The Complaint alleges that Robbins represented to Hooper that Robbins had substantial experience in and knowledge of the timber business. (Compl. ¶¶ 11, 19.) It is alleged that Hooper told Robbins that Hooper did not have any such knowledge, but that he would fund a timber business and rely on Robbins to manage the business, to which Robbins

agreed. (Compl. ¶¶ 11, 19.) The Complaint fails to allege that Robbins, through misrepresentations or otherwise, induced Hooper to form and become a member of Timbercreek. *See* Robinson, § 17.02[2] (listing as an example of an individual claim an action "to recover damages from an 'insider' or other party who induced him to buy or sell shares in the corporation either by actual misrepresentations or by failing to disclose pertinent information about the corporate affairs in breach of a fiduciary obligation" (footnote omitted)). Likewise, the Complaint does not allege that Robbins induced Hooper to become a guarantor of Timbercreek's debt. *Barger*, 346 N.C. at 661, 488 S.E.2d at 221 ("We apply the same rules for establishing a special duty when plaintiffs are guarantors as we apply when plaintiffs are shareholders.").

47. Therefore, the Court concludes that the Complaint fails to allege that Robbins induced Hooper to become a member or guarantor so as to create a special duty between Hooper and Robbins.

48. Plaintiffs further argue that the Complaint sufficiently alleges that Robbins owed a fiduciary duty, and thus a special duty, to Hooper. (Pls.' Resp. Br. 14−16, 20.) "[A] fiduciary relationship is generally described as arising when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014) (quotation marks omitted). Domination and influence are an essential component of any fiduciary relationship. *Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 708 (2001). "The standard for finding a *de facto* fiduciary relationship is a demanding

one: 'Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.'" *Lockerman v. S. River Elec. Membership Corp.*, 794 S.E.2d 346, 352 (N.C. Ct. App. 2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 552, 451 (2008)). In general, an employer-employee relationship does not give rise to fiduciary duties. *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708; *Lockerman*, 794 S.E.2d at 351−52. "Even when an employee is entrusted with substantial managerial authority, a fiduciary relationship will not exist absent evidence that such authority led to the employer being subjugated to the improper influences or domination of [its] employee." *Artistic S. Inc. v. Lund*, 2015 NCBC LEXIS 113, at *41−42 (N.C. Super. Ct. Dec. 9, 2015) (alteration in original) (quotation marks omitted).

49. Plaintiffs allege that Hooper had the power to select and remove all of Timbercreek's agents and employees. (Compl. ¶ 15.) Plaintiffs contend that Hooper exercised this power in hiring and delegating to Robbins the authority to act on behalf of Timbercreek to perform a wide range of duties. (Compl. ¶ 16.) The Complaint further alleges that

> [b]ased on the gross disparity of their knowledge concerning the timber industry, Hooper reposed special confidence in Robbins, and Robbins, who controlled all of the technical information concerning how to operate the business, exercised domination and influence over Hooper with respect to the business. As such, Robbins was bound to act in good faith with due regard to Hooper's interest at all times.

(Compl. ¶ 26.)

50.    Although "[a] fiduciary duty may constitute a 'special duty' when owed directly to a party[,]" *Corwin*, 796 S.E.2d at 338, any duty arising out of Robbins's superior knowledge of the timber business is also owed to Timbercreek—it is not unique to Hooper.  Indeed, Plaintiffs argue in their brief that "Robbins held all of the technical information regarding the timber industry in the relationship between both Plaintiffs." (Pls.' Resp. Br. Opp'n 14.)  The Complaint alleges that Robbins exercised domination and influence over Hooper with respect to *Timbercreek's business.* Moreover, the Complaint alleges that Hooper hired Robbins to work for Timbercreek, reposed confidence in Robbins concerning the operation of Timbercreek, and delegated to Robbins the authority to act on behalf of Timbercreek.  Accordingly, any duty to Hooper created therefrom is not distinct from the general fiduciary duties Robbins owed to Timbercreek to act in good faith, with the care of an ordinary prudent person, and in Timbercreek's best interests.  *See Corwin*, 796 S.E.2d at 339 ("Because the legislature intended shareholders to bring derivative actions, as opposed to direct actions, and a directors' fiduciary duty is to the corporation generally and not the shareholder individually, a shareholder's action against a director should be brought derivatively unless he or she can allege facts that the director owed him or her a special duty beyond that of the general fiduciary duty to the corporation."); Robinson, § 17.02[1] ("One of the clearest examples of a derivative action is a suit against the officers or directors of a corporation for mismanagement of its affairs as constituting a breach of their fiduciary obligations to the corporation.  Thus, for example, an action must be brought derivatively on behalf of the corporation against its officers or

directors for . . . fraudulently dissipating the assets of the corporation, or for a fraudulent withdrawal and appropriation of corporate assets." (footnotes omitted)).

51. To the extent Plaintiffs argue that Hooper has suffered a special injury because Hooper personally guaranteed Timbercreek's obligations, this argument is unavailing. The loss of one's investment, regardless of amount, is identical to the injury suffered by the LLC. *Energy Inv'rs Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 336, 525 S.E.2d 441, 444 (2000). Further, "consequential damages incurred as a result of personally guaranteeing corporate debts do not constitute a separate and distinct injury from that injury which was suffered by the corporation." *Griffin Mgmt. Corp. v. Carolina Power & Light Co., Inc.*, 2009 NCBC LEXIS 25, at *11 (N.C. Super. Ct. Nov. 13, 2009).

52. Therefore, the Court concludes that the Complaint fails to allege that Hooper suffered a special injury or was owed a special duty separate and distinct from Robbins's fiduciary duties to Timbercreek. As such, the Motion as to Hooper's breach of fiduciary duty claim is granted. During the hearing, counsel for Defendants stipulated that any dismissal due to a defect in the pleadings should be without prejudice. Accordingly, Hooper's breach of fiduciary duty claim is dismissed without prejudice.

### C.    Plaintiffs' Constructive Fraud Claim (Third Cause of Action)

53. "To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff

was, as a result, injured." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). A constructive fraud claim requires the existence of a fiduciary duty. *Brissett v. First Mount Vernon Indus. Loan Ass'n*, 233 N.C. App. 241, 252, 756 S.E.2d 798, 806 (2014). The difference between a constructive fraud claim and a breach of fiduciary duty claim is that a claim for constructive fraud requires that defendant sought to benefit himself. *White*, 166 N.C. App. at 294, 603 S.E.2d at 156.

54. As the Court has concluded that the Complaint fails to allege a fiduciary relationship between Hooper and Robbins, the Motion as to Plaintiffs' constructive fraud claim, to the extent brought by Hooper, is granted and this claim is dismissed without prejudice.

55. On the other hand, as the Court has concluded that the Complaint sufficiently alleges a fiduciary relationship between Timbercreek and Robbins, the sole issue on the Motion is whether the Complaint sufficiently alleges that Robbins took advantage of that relationship in order to benefit himself. In this regard, the Complaint alleges that Robbins caused Timbercreek to overpay loggers and log haulers in exchange for cash payments to Robbins in the amount of the excess funds. (Compl. ¶ 30.) The Complaint further alleges that Robbins used Timbercreek's property to conduct timber operations for the benefit of his own LLCs, Falling Oak Timber and Falling Oak Enterprises. (Compl. ¶¶ 39, 44, 55.) The Court concludes that these allegations are sufficient to state that Robbins took advantage of his

fiduciary relationship in order to benefit himself. Therefore, the Motion as to Timbercreek's constructive fraud claim is denied.

D. **Plaintiffs' Claims for Civil Arrest, Injunctive Relief, and Claim and Delivery (Fifth, Sixth, and Seventh Causes of Action)**

56. The Motion seeks dismissal of Plaintiffs' claims for civil arrest, injunctive relief, and claim and delivery. In their brief, Plaintiffs did not address the Motion as to these claims and, during the hearing on the Motion, Plaintiffs stipulated that these claims have been abandoned. Therefore, the Motion as to Plaintiffs' claims for civil arrest, injunctive relief, and claim and delivery is granted.

## V. CONCLUSION

57. For the foregoing reasons, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

A. The Court **GRANTS** the Motion as to Hooper's claims for breach of fiduciary duty and constructive fraud and dismisses these claims without prejudice.

B. The Court **GRANTS** the Motion as to Plaintiffs' claims for civil arrest, injunctive relief, and claim and delivery and dismisses these claims with prejudice.

C. The Court **DENIES** the Motion as to Timbercreek's claims for breach of fiduciary duty and constructive fraud.

**SO ORDERED**, this the 28th day of July, 2017.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases